# EWEN vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

ANSWER: (1) *Must deny specially plaintiff's representative character.*

INJURY TO PERSON, CAUSING DEATH: DAMAGES: EVIDENCE: PLEADING: CONTRIBUTORY NEGLIGENCE: INFANCY: COURT AND JURY. (2) *Statutory rule of damages* (3, 4) *Injury to minor: Evidence as to circumstances of parents.* (5) *Whether such circumstances must be pleaded.* (6–10) *When question of contributory negligence for the jury. How affected by age of person injured, etc. Instructions considered.* (12) *Excessive damages.*

RAILROADS: NEGLIGENCE. (11) *Speed of trains in cities: Statute construed.*

Ewen vs. The Chicago & Northwestern Railway Company.

1. A mere *general denial* does not put in issue the representative character of the plaintiff, alleged in the complaint; but that issue must be raised by a *special* denial. 28 Wis., 103.

2. In an action under the statute for injuries to the person of plaintiff's intestate, causing his death (R. S., ch. 135, secs. 12, 13), although the recovery must be confined to damages of a strictly *pecuniary* kind, yet the jury are not held to any fixed and precise rules in estimating the amount of damages (within the statutory limit on that subject), but may compensate *all* pecuniary injuries, from whatever source they may proceed.

3. Where the damages in such an action go to the parents of the deceased, evidence of their health and estate, and of other facts bearing on the probabilities of their needing the services of the deceased, or of their suffering any actual pecuniary loss from his death, may be submitted to the jury.

4. Thus, where the deceased was a boy eight years old, evidence was competent to show that his mother was a widow, and in poor health; that she had but little means, and was mainly supported by her friends; and that she drew a pension of two dollars per month, which was cut off by the death of the child.

5. It was not necessary, in such a case, to allege specially, in the complaint, the loss of such pension by the mother of the deceased in consequence of his death, in order to render evidence of the fact admissible.

6. In such an action, where deceased was killed by a locomotive engine in crossing defendant's railway track, if it were clear from the undisputed facts, that the boy himself, considering his age and intelligence, did not exercise proper care in crossing the track, or that, in view of his tender years, his mother was guilty of contributory negligence in permitting him to go alone, on the errand upon which he was sent across such track, the trial court might determine, as a proposition of law, that there could be no recovery.

7. But where the circumstances leave the inference of negligence in doubt, and the court is unable to say that *upon the most favorable construction, for the plaintiff, which can be given to his evidence*, there is nothing to submit to the jury, a nonsuit is improper.

8. Upon the evidence in this case bearing upon the question of contributory negligence, a nonsuit was properly denied.

9. The court, after stating the rule of contributory negligence applicable to adults, instructed the jury that "looking at the case as the person injured in fact was, as to age and intelligence," if he was not "in the exercise of ordinary care and caution in going on the railroad track, but was guilty of negligence in doing so, and by reason thereof was

killed," no recovery could be had, although the defendant was running the engine at an unlawful speed; but if the injured person was of such tender years as to be unfit to be allowed to go alone in such a place, and not capable of exercising ordinary care, it was negligence on the part of those having him in charge to allow him to do so; and "if the injury was occasioned or contributed to by reason of his inability to exercise ordinary care," plaintiff could not recover. *Held*, that there was no error, as against defendant, in these instructions, nor in a refusal to further charge that if the mother sent the boy, or knew of his being sent, across the tracks, and *failed to caution him* to use care in crossing them, she was guilty of negligence which would prevent a recovery.

10. The court further instructed the jury, that, as a general proposition, it is the duty of every person going upon or across railroad tracks, to look each way to see if a train is approaching; but whether the boy did so, and saw the approaching train, *or whether*, *failing to do so, he was excused under the circumstances*, were questions for them, in determining whether there was contributory negligence. *Held*, that there was no error in this instruction, in view of the evidence as to the situation of the different tracks at the crossing in question, and the facts, that cars were standing on some of the tracks, which to some extent cut off the view of the approaching engine on defendant's track; that this engine was backing down at an unlawful speed, which might deceive one calculating the chances of a safe crossing; and that a train was coming in the opposite direction upon an adjoing road, which might divert the attention.

11. The statute requires that all railroad companies shall "cause the bell on the engine to be rung before crossing any of the streets" of an incorporated city, and that their trains shall not go faster than six miles an hour until "they have passed *all traveled streets* of said city." *Held*, that these provisions apply to all actually traveled streets within the city limits, though such only by user, and not merely to streets dedicated by recorded plats, or laid out and adopted by the municipal authorities.

12. The court refuses to set aside as excessive a verdict for $2,500 in the present case.

APPEAL from the Circuit Court for *Waupaca* County.

Action under sections 12 and 13, ch. 135, R. S., by the plaintiff as administrator, to recover damages alleges to have been sustained by Mrs. Kittie McCall by the death of her son, an infant about nine years of age, caused by the negligence of

the defendant in operating its railway in Milwaukee, on November 23, 1872. The answer was a general denial, and a charge of contributory negligence.

It appeared from the evidence that at the time of the accident Mrs. McCall was a widow, thirty-four years of age, with two children; that she had been in the habit of visiting every season with Mrs. Wilcox, who lived near the place of the accident, and had been stopping there with her children for four weeks prior to the accident; that James, the deceased, had been in the habit of going, at her request, to call a Mr. Ricketson to his meals, though usually accompanied by his sister; that on the morning of November 23d, one of the members of the family sent the boy, with his mother's permission, to the office of the Milwaukee Iron Company, which was across defendant's track, to call Ricketson to breakfast; that between the house of Mrs. Wilcox and the office of the iron company there were four tracks of the iron company, and one of the M. & St. P. R'y Co., besides that of the defendant, running north and south; that at the place in question there was a foot and wagon way, running from the lake across the track; that engines and cars were being used on these tracks much of the time, the cars of the iron company being often thrown across the way unattended by engines, to be carried, by their momentum, some distance beyond; and that this road crossing was within the city limits. A witness for the plaintiff testified, among other things, as follows: "The day the boy was killed, I was at the scale house, four or five hundred feet away. I saw an engine coming on the *Northwestern Company's* track, and I saw the boy coming down to the track. About a minute before or a little less, I saw the boy running down the road from Wilcox's house on the track; then he disappeared behind the train that stood on the scale track to be weighed, so that I could not see any more of him. Before he got on to the track, he had a big black dog with him, and I noticed he kind of slapped his hand over and made towards the dog to

follow him, and then both started, the dog and he. I saw him about five feet, then he disappeared behind the cars. That was the last I saw of the boy alive; he came from toward the lake."

The testimony for the plaintiff further tended to show that there were several trains standing near by on the different tracks; that there was a train going in the opposite direction on the Milwaukee & St. Paul road; that the engine which caused the death of the deceased, was backing across the highway at the rate of from twelve to fifteen miles an hour; that no bell was rung as the engine approached the crossing; that the passenger train had passed, and the engine in question had a few minutes before been hauling a gravel train, a wild train; that the highway crossing had been within the city limits of Milwaukee for eighteen or twenty years; and that the road had been used as a highway for thirty-nine years.

During the trial, two children, who were playing near the place of the accident at the time of its occurrence, were called, one by the plaintiff and the other by the defendant, and testified that the deceased stopped for a moment on the track, when one of them called to him telling him to "look out."

Evidence was given showing that the deceased was a bright, healthy boy, and also, under objection, that his mother had no property except a small house, and no means of support except that she received a pension of twenty dollars per month, and "two dollars per month for her children."

The defendant moved for a nonsuit, on the grounds, (1) that the plaintiff had not proved that he was administrator of the deceased, and hence had shown no right to prosecute this action; and (2) that the deceased and his mother were each guilty of contributory negligence. This motion was overruled.

A large amount of testimony was given for the defendant, tending to show, among other things, that there was no other point nearer than a mile where people or teams crossed the

tracks; that the country between the crossing and the city was low and marshy; that the bell had been ringing before the accident, and was ringing at the time; that the engineer was looking for obstructions at the time of the accident, and had his head out of the side window; that he could not see the track within fifty feet of the tender, it being hidden from view by the tender; that in looking over the tender it would obscure the track for about three hundred feet; that just as they entered the street crossing, the engineer thought he saw a big dog rush upon the track; that he then turned his head out and saw a little boy, and said they had run over somebody, and this was the first he had seen of the boy; that this crossing was not generally regarded as a place within city limits where they were required to reduce speed; that the fireman and one or two others were on the engine, but none of them saw the boy before the accident; and that there was no natural obstruction to the view, as one approached from the lake to the crossing.

The instructions given, and those refused, are sufficiently stated in the opinion.

*William Ruger*, for appellant:

1. The court erred in allowing sympathy to be created by proof that Mrs. McCall was supported by the bounty of her friends. *Potter v. R'y Co.*, 21 Wis., 374; *Same Case*, 22 id., 615. 2. It was error to receive evidence as to the loss of pension. R. S., ch. 135, sec. 13; *Althorf v. Wolfe*, 22 N. Y., 355; *Dalton v. R'y Co.*, 93 E. C. L., 296. In any event the damages would be special and not provable unless specially alleged. Sedgwick on Dam., 575–577: *Stafford v. Drew*, 3 Duer, 632–4; *Gilligan v. R'y Co.*, 1 E. D. Smith, 453. See also *Seaman v. F. L. & T. Co.*, 15 Wis., 578; *Potter v. R'y Co.*, 21 id., 374–6; *Same Case*, 22 id., 615; *State to use of Coughlan v. R'y Co.*, 5 Am. Law Reg., N. S., 402–5; *R'y Co. v. Sweet*, 45 Ill., 204; *Duckworth v. Johnson*, 4 H. & N., 653; *Pa. R. R. Co. v. Vandever*, 36 Pa. St., 298; *Telfer v. R'y Co.*, 3 Am. Law Reg., N. S., 673–5. 3. The court erred in overruling the motions for a

nonsuit. (1) For lack of testimony to show the plaintiff's representative character. Sec. 10, ch. 125, R. S.; 2 Wait's Pr., 419–20 ; 1 Van Santv. Pl., 405, 408–9; 2 Till. & Shearm. Pr., 152; *Whiton v. R'y Co.*, 21 Wis., 308. (2) For the reason that both the deceased and his mother were guilty of contributory negligence. *Kellogg v. C. & N. W. R'y Co.*, 26 Wis., 257–8; *Wilds v. R'y Co.*, 24 N. Y., 440 ; 29 id., 315 ; *Telfer v. R'y Co.*, 3 Am. Law Reg., N. S., 665–9; *R'y Co. v. Evans*, 53 Pa. St., 254–5; *Langhoff v. R'y Co.*, 23 Wis., 43 ; *Delaney v. R'y Co.*, 33 id., 67; *Honegsberger v. R'y Co.*, 1 Keyes, 570 ; *R'y Co. v. Vining*, 27 Ind., 513–520 ; *Rothe v. R'y Co.*, 21 Wis., 256; *Skelton v. R'y Co.*, L. R., 2 C. P., 631 ; *Stubley v. R'y Co.*, L. R., 1 Exch., 13 ; *Butterfield v. R'y Co.*, 10 Allen, 532 ; *R'y Co. v. Heileman*, 49 Pa. St., 60; *R'y Co. v. Coyle*, 55 id., 396 ; *Gonzales v. R'y Co.*, 38 N. Y., 440–4 ; *R'y Co. v. Still*, 19 Ill., 499 ; *R'y Co. v. Hunter's Adm'r*, 33 Ind., 356. 4. The court erred in the charge given, and in refusing to charge as requested by the defendant, respecting questions of negligence. Cases cited above, and also *Baxter v. R'y Co.*, 41 N. Y., 504–5 ; *Dascomb v. R'y Co.*, 27 Barb., 221 ; *Shaw v. R'y Co.*, 8 Gray, 72 ; *Butterfield v. R'y Co.*, 10 Allen, 532 ; *Gleason v. Day*, 9 Wis., 499–501 ; *Davenport v. Schram*, id., 119; *Imhoff v. R'y Co.*, 20 id., 346–8 ; *Toomey v. R'y Co.*, 91 E. C. L., 149 ; *Van Valkenburgh v. Hoskins*, 7 Wis., 498 ; Graham on New Trials, 368–386, 392, 495–498. 5. The court erred as to the requirements of the statute respecting the crossing in question. The term streets, as used in the statute (sec. 43, ch. 119, Laws of 1872), refers to ways dedicated *as streets* by the recording of plats, or such as have been laid out or adopted *as streets* by the municipal authorities; and does not include public highways which have not been so dedicated, laid out or adopted, even though they may be included within the corporate limits. Mere use is not sufficient to constitute a street, within the meaning of this statute. *Rothe v. R'y Co.*, 21 Wis., 256. Hence the court erred in charging, *as matter of law*, that it was defendant's duty to

ring the bell before crossing. 6. The damages are excessive. The statute should be interpreted as authorizing a recovery of such pecuniary loss as is shown to have resulted to the person entitled to the recovery. *Potter v. R'y Co.*, 21 Wis., 372; 22 id., 617; *Castello v. Landwehr*, 28 id., 522; *Ford v. Monroe*, 20 Wend., 210; *Major v. Chicago*, 18 Ill., 359, 360; *Teljer v. R'y Co., supra.*

*Charles A. Eldredge*, for appellant, argued from the evidence that the deceased and his mother were guilty of a want of ordinary care, and that the nonsuit should have been granted, and cited *Hartfield v. Roper*, 21 Wend., 614; *Flynn v. Hatton*, 43 How. Pr., 333, 355, 356; *Holly v. Boston Gas Light Co.*, 8 Gray, 132; *Wright v. R. R. Co.*, 4 Allen, 289; *Callahan v. Bean*, 9 id., 402; *Potter v. Chicago & N. W. R'y Co.*, 21 Wis., 382. 2. There should have been *evidence* of the exercise of ordinary care by the mother and the deceased. *Butterfield v. Forrester*, 11 East, 60; *Potter v. Chicago & N. W. R'y Co.*, 20 Wis., 563; *Achtenhagen v. Watertown*, 18 id., 332; *Adams v. Carlisle*, 21 Pick., 147; *Butterfield v. Western R. R.*, 10 Allen, 532; *Philadelphia R. R. v. Hummel*, 44 Pa. St., 375; *Wilds v. Hudson River R. R.*, 24 N. Y., 430; *Phillips v. Saratoga R. R.*, 49 N. Y., 179; *Wilcox v. R. & W. R. R.*, 39 id., 358; *Ernsi v. Hudson River R. R.*, 35 id., 9; *Warner v. N. Y. Central R. R. Co.*, 44 id., 470; Wharton's Law of Negligence, sec. 426; *Hays v. Gallagher*, 72 Pa. St., 140. 3. The court erred in the charge to the jury. See cases above cited, and *Gleason v. Day*, 9 Wis., 500; *Bancroft v. B. & W. R. R.*, 92 Mass., 278; *Forsyth v. B. & A. R. R. Co.*, 103 id., 513.

*E. S. Bragg*, for respondent:

1. The evidence that Mrs. McCall was supported by the bounty of her friends was admissible, this court having settled the law to be, that the age and circumstances of the parent furnish an important element in the damages allowed by reason of the wrongful death of a minor. *Potter v. C. & N. W. R'y*

*Co.*, 21 Wis., 372; *Same Case*, 22 id., 615.   2. Evidence as to the loss of pension was proper to show the situation of the mother, and the value of her son's life to her.   Nor was it necessary that the complaint should allege special damage. *Dalton v. S. E. R'y Co.*, 93 E. C. L., 296 ; *Duckworth v. Johnson*, 4 Hurl. & N., 652 ; *Rowley v. London & N. W. R. R. Co.*, L. R., 8 Exch., 221 ; *Murphy v. Kipp*, 1 Duer, 659 ; *Stafford v. Drew*, 3 id., 641 ; *Tilley v. Hudson R. R'y*, 29 N. Y., 252 ; *Barron v. Ill. Central R. R. Co.*, 5 Wall., 90.   3. The motion for nonsuit was properly denied.   It was unnecessary to offer proof of the plaintiff's capacity to sue.   The question would not have been raised by the plea of the general issue at common law, and the point is fully settled by *Sanford v. McCreedy*, 28 Wis. 101, and Tay. Stats., 1438, §§ 8 and 9.   Counsel argued from the testimony that there was no contributory negligence for which a nonsuit should have been granted, and cited *Drew v. Sixth Av. R. R. Co.*, 26 N. Y., 49 ; *Ihl v. R. R. Co.*, 47 id., 318 ; *Perkins v. Fond du Lac*, 34 Wis., 439 ; 2 Cent. Law Jour., No. 33, p. 531 ; *Pa. R. R. Co. v. Weber*, 2 Am. Law Reg., N. S., 864. 4. The court did not err in the charge given, nor in refusing to charge as requested by the defendant, respecting questions of negligence.   *R. R. Co. v. Gladmon*, 15 Wall., 401 ; *McMahon v. The Mayor*, 33 N. Y., 642 ;   Shearm. & Redf. on Neg. (3d ed.), § 49 ; *Oakland R. R. Co. v. Fielding*, 48 Pa. St., 320 ; *Robinson v. Cone*, 22 Vt., 213 ; *Mangam v. Brooklyn R. R. Co.*, 38 N. Y., 455 ; *Butler v. M. & St. P. R'y Co.*, 28 Wis., 488 ; *Barstow v. Berlin*, 34 id., 363 ; *Mentz v. Second Av. R. R. Co.*, 2 Rob., 356 ; *O'Mara v. Hudson R. R. Co.*, 38 N. Y., 445 ; *N. J. Steam Navigation Co. v. Merchants' Bank*, 6 How. (U. S.), 425 ; *Lackawanna & Bloomsburg R. R. v. Doak*, 52 Pa. St., 379 ; *R'y Co. v. Geddis*, 33 Ill., 304 ; 50 id., 117.   5. There was no error in the construction of the statute, sec. 43, ch. 119, Laws of 1872.   It is a highly remedial statute, made in the interest of human life, and should be liberally construed.   6. The damages are not

excessive. A liberal construction should be given to the term "pecuniary injury." *Tilley v. Hudson River R. R. Co.*, 29 N. Y., 296; 5 Wall., 90.

COLE, J. The counsel for the defendant company discussed the exceptions in this case in nearly the order in which they arise upon the record; and it will be convenient to consider them in the same order.

In the first place, it is insisted that the circuit court erred in allowing the plaintiff to prove that Mrs. McCall, the mother of the deceased, was in destitute circumstances and mainly supported by her friends. Testimony of this description, it is said, had a direct tendency to excite the sympathies of the jury in her favor, and was calculated to prejudice the defendant. In actions of this character, it is admitted by all who have had occasion to consider the subject, that it is impossible to lay down any clear and precise rule for estimating the damages. Much is left to the discretion and sound judgment of the jury in the particular case. The statute says the jury may give such damages, not exceeding five thousand dollars, as they shall deem fair and just in reference to the pecuniary injury resulting to the relatives named from the death of the person killed. Sec. 13, ch. 135, R. S. Although the recovery must be confined to damages of a strictly pecuniary character, yet a wide scope is designedly left for the action of the jury under the statute, who may, within the specified limit, award what "they shall deem fair and just." And as the health and estate of the parents, their worldly prospects and pecuniary condition, must necessarily have much to do with the question of damages and the probabilities that they might need the services of the deceased, this court held in *Potter v. Chicago & Northwestern Railway. Co.*, 21 Wis., 373, and 22 id., 615, that all evidence bearing upon these points was proper to be submitted to the jury. Says Mr. Justice DOWNER, in the 21st Wis.: "So far as we have examined, in suits like this for the benefit of parents, where damages

have been recovered other than the value of the services of the deceased during minority, there has been testimony showing the condition of such parents, or tending to prove it." p. 375. Within the rule recognized and approved in this case on both appeals, it seems to us the evidence objected to was admissible. It was competent to show that Mrs. McCall was a widow; that her health was poor; that she had but little means, and was mainly supported by her friends. How else was it possible to show that she would probably need the assistance of her son, and the extent of that need, than by proving her pecuniary circumstances and present destitution? The counsel say the fact to be proved was the pecuniary value to her of the assistance she would have received from her son in case he had not been killed. And, as tending to show this, they concede that it was competent to prove her probable need of such assistance, and the extent of such need, and that this might be shown by proving her means of support in property, income and ability to earn money. The testimony objected to but admitted had a tendency to prove these very things; and the concession of counsel as to what might be shown is in accordance with the authorities, and fully justifies the ruling of the court upon this point. If, as is claimed, such testimony tends to excite the feelings and sympathies of jurors, the weakness — if weakness it be — is ineradicable in human nature.

It is further claimed that the court erred in receiving evidence as to the loss of pension, and in refusing to instruct the jury that the plaintiff could not recover damages on that ground. It appeared that Mrs. McCall drew a pension, and she was permitted to testify, against the defendant's objection, that her son killed was eight years old, and that she drew two dollars a month under the pension laws on his account. It is argued that this reduction of Mrs. McCall's pension by reason of the death of her son is not a ground for recovery of damages under the statute, and ought not to have been submitted to the jury; because, it is said, such loss was an inci-

dent and not the result of the death.   I am not confident that
I fully comprehend the argument of counsel on this point.;
certainly I fail to appreciate its force.   Fair and just compen-
sation is surely given  by the statute for all  the  pecuniary in-
jury resulting from the negligent killing of the child.   The
mother undeniably sustained an actual pecuniary loss of two
dollars a month by his death ; and it seems quite unsatisfac-
tory to say that this cannot be recovered as a part of the dam-
ages because it is merely an incident and not the consequence
or result of the death.   Suppose the boy had been engaged in
some permanent employment in which he was earning for his
mother two dollars a month :  would not the loss of his wages
have been a proper matter to be considered by the jury in es-
timating damages for the pecuniary injury resulting to her
from his death?   So far as the child, by his industry, contrib-
uted to her support, to the extent of the pecuniary value of
that contribution, within the doctrine of all the cases, the
mother would be entitled to compensation.   Nor do we find
anything in *Dalton v. S. E. Railway Co.*, 93 E. C. L., 296, or
*Althorf v. Wolfe*, 22 N. Y., 355, to which we are referred by
counsel on this point, in conflict with that view.   It seems to
us the principle of both these decisions would allow a recovery
for the loss of pension.   In the first case the court held that
legal liability alone is not the test of injury in respect of which
damages may be recovered ; but that the reasonable expecta-
tion of pecuniary advantage by the relation remaining alive
may be taken into account by the jury, and damages given in
respect of that expectation being disappointed and the proba-
ble pecuniary loss thereby occasioned.   In *Althorf v. Wolfe*,
the court, by implication, decide that money received by the
widow on a policy of life insurance on the deceased is not to
be taken into account by the jury in assessing damages.   The
cases are quite numerous which hold that specific proof of pe-
cuniary loss need not be shown in order to recover substantial
damages.   Reference to them will be found in Sedgwick on

Damages (6th ed.), p. 696, note 2. Thus, in the case of *Ihl v. Forty-second Street etc.*, 47 N. Y., 317, which was an action for the negligent killing of a child three years old, the court held that the absence of proof of special pecuniary damage resulting from the death of such child would not justify the court in nonsuiting the plaintiff, or in directing the jury to find only nominal damages. "Except in very rare instances," says Judge RAPALLO in delivering the opinion of the court in that case, "it would be impracticable to furnish direct evidence of any specific loss occasioned by the death of a child of such tender years; and to hold that, without such proof, the plaintiff could not recover, would in effect render the statute nugatory in most cases of this description. It cannot be said as a matter of law that there is no pecuniary damage in such a case, or that the expense of maintaining and educating the child would necessarily exceed any pecuniary advantage which the parents could have derived from his services." See also *Balt. & Ohio R'y v. The State for use of Kelley*, 24 Md., 271; and *Railroad Company v. Barron*, 5 Wall., 90.

It is plain that in this case there was direct and positive proof of actual pecuniary loss in the pension of two dollars a month, in consequence of the death of the child, and the mother's income was diminished to that extent. And it seems to us very clear that damages for such a loss are recoverable in the action under the statute. If they are not, the statute fails to allow a fair and just compensation for the pecuniary injury sustained by the mother by the death of her child. For it is not denied that she has lost two dollars a month of her pension in consequence of such death, and the pecuniary advantage by his remaining alive has been to that extent, at least, destroyed.

But it is insisted that if such a loss could be recovered, the damages would be special in their nature, and not provable under the complaint in the absence of a special averment counting upon them. This raises the question, whether the reduc-

tion of Mrs. McCall's pension resulting from the death of her child was a fact which it was necessary not only to prove but to specially allege in the complaint in order to render the evidence admissible. The action is given by the statute to compensate the persons therein specified for the pecuniary loss which they may sustain by the wrongful or negligent killing of a relative. No form of complaint is prescribed, and we suppose it is sufficient if it states the facts which it would be necessary to aver in case the action were brought by the injured person. In such an action it would not be necessary to specify in the complaint all the items or particulars which would enter into the computation of the plaintiff's damages: as so much for loss of services; so much for the loss of a limb; so much for mental and bodily suffering. Such damages necessarily result from the wrongful act complained of, and consequently are implied by law, and need not therefore be specially set forth in the complaint. When the damages sustained have not necessarily accrued from the act complained of, and when the law does not imply them, in order to prevent surprise on the defendant which might otherwise ensue on the trial, the plaintiff is required in general to state the particular damage which he has sustained, or he will not be permitted to give evidence of it. 1 Chitty's Pl., 458; *Squier v. Gould*, 14 Wend., 159. An examination of the cases which have arisen under similar acts in this country and in England will show that damages are scarcely ever stated but in a general manner. From the nature of the case it would frequently be impracticable to state them in any other way. The case of *Safford v. Drew*, 3 Duer, 627, shows that under a section of the English statute the plaintiff may be required to deliver a particular statement of the nature of the claim in respect of which damages shall be sought to be recovered; a provision which it is obvious would be entirely unnecessary if the rules of pleading required the damages to be specially alleged. It would be unreasonable, in actions of this kind, to require the plaintiff to state in his com-

plaint all the items, and the amount of each, which would enter into the computation of the damages which he might prove he had sustained. The statute requires no such particularity of statement; nor do we think the principles of pleading require it. Whatever damages the mother sustained by reason of the wrongful killing of her child — whether the damages be what are termed general or special,— may be recovered under a complaint in this general form of statement; or at least the loss of pension need not have been particularly alleged. This is as far as it is necessary to go in laying down the rule for alleging damages in the present case.

The next exception arising on the record is the one taken to the ruling of the court refusing to nonsuit. It is insisted that the nonsuit should have been granted for failure to prove the representative character of the plaintiff. It is said the representative character of the plaintiff was directly put in issue by the general denial in the answer, and that therefore the plaintiff was bound to prove it in order to maintain the action. This question was considered and passed upon in *Sanford v. McCreedy*, 28 Wis., 103, and *Wittmann v. Watry*, 37 id., 238. In the former case, Mr. Justice LYON remarks, that the general denial under the code has no broader application than the general issue under the old system of pleading, and that all the authorities agreed that the representative character of the plaintiff was not put in issue by a plea of the general issue. In *Wittmann v. Watry*, where the plaintiff sued as executrix, the answer contained a special denial of her representative character; and this court held that this form of denial put in issue the character in which the plaintiff sued, and that it was essential for her to prove that she was executrix. It was in the nature of a special plea in bar, as in *Thomas v. Cameron*, 16 Wend., 579, and *Flinn v. Chase*, 4 Denio, 86. It is very evident that under the rule laid down and sanctioned in the above cases, the representative character of the plaintiff would be put in issue only by a special denial of that fact in the answer, and

that under the general denial the defendant did not controvert it. And as the representative character of the plaintiff was impliedly admitted under the form of the answer, it follows of course that the plaintiff was not obliged to prove it. It is said that this construction of the answer plainly disregards the language of the statute (sec. 10, ch. 125), and destroys the effect which it gives to a general denial. We do not understand that the statute enacts what effect shall be given the general denial in the answer. It declares what the answer shall contain, but does not state that the general denial shall be deemed to controvert in all cases every material allegation of the complaint.

Another ground upon which it is claimed a nonsuit should have been granted is, that the evidence showed that both the deceased and his mother were guilty of contributory negligence. Were it clear from the undisputed facts of the case, as argued by the learned counsel for the defendant, that the boy himself, considering his age and intelligence, was at fault while crossing the railroad track when he was killed, and did not exercise proper care ; or if it appeared that he was too young to be *sui juris*, and that the negligence of his mother in permitting him to go alone on the errand on which he was sent contributed to the accident,— then we could say, as a proposition of law, that there could be no recovery. But when the circumstances leave the inference of negligence in doubt, and the court is unable to say that upon the most favorable construction which can be given to the evidence for the plaintiff, there is nothing to submit to the jury, a nonsuit is improper. *Langhoff, Adm'r, v. Milwaukee & P. du C. R'y Co.*, 19 Wis., 489 ; *Houfe v. The Town of Fulton*, 29 id., 296. It is impossible for this court to say that there was such negligence or want of ordinary care on the part of either the child or mother, or such clear and indisputable evidence showing it, that the case should not have been submitted to the jury upon the facts. And we therefore think there was no error in the ruling upon the motion for a nonsuit. *O'Mara v. Hudson River R'y*, 38

N. Y., 445 ; *Mangam v. Brooklyn R'y*, id., 455 ; *Ihl v. Forty Second Street, supra; Butler, Adm'x, v. M. & St. P. R'y Co.*, 28 Wis., 488. The counsel for the defendant insist that it is perfectly manifest from the testimony that there was negligence both on the part of the mother and child which directly contributed to the accident. They argue with great force, that, as the mother and child were familiar with the crossing, and knew that it was a dangerous place, it was carelessness on the part of the mother to suffer the boy to go upon the errand unwarned and unattended; and that the boy, had he used proper watchfulness and discretion, could and would have seen the engine and tender coming down the track in plain sight towards him. For want of time we cannot go into any examination of the testimony bearing upon the question of contributory negligence. We can only state our conclusion that the court was fully justified, in view of all the facts and circumstances surrounding the transaction, in submitting that question to the jury.

It is further claimed that the court erred in the charge given, and in refusing to charge as requested by the defendant, respecting questions of negligence. Among other things, the court was asked to give the following requests, which were refused :

"5. If the deceased was capable of exercising as high a degree of care with respect to crossing the track of a railway as can reasonably be expected from adult persons, then he was guilty of such negligence as will prevent a recovery in this action.

"6. If deceased went upon the track of defendant's railway, and was stricken down and killed by defendant's engine and tender, without having seen such engine or tender at all, he was guilty of such negligence as will prevent a recovery in this action.

"8. It was the duty of the deceased to look carefully along the track of defendant's railway in both directions before

putting himself in the way of danger, and in time to see and avoid any engine or train which might be approaching; and if he failed to do so, the plaintiff cannot recover.

" 9. If the mother of the deceased sent him, or knew of his being sent, across the railway tracks to call Mr. Ricketson to breakfast, and failed to caution him to use care in crossing such tracks, she was guilty of such negligence as will prevent a recovery in this action."

The court charged, laying down the law upon the subject of negligence, to the following effect, instead of giving the above requests. It told the jury that in cases of this kind adults or persons of full age and discretion, who claim damages, must satisfy the jury that they were in the exercise of ordinary care and caution at the time of the accident; and if it appears that they were not, but were themselves guilty of negligence which contributed to the injury, there can be no recovery; that this would be the case as to adults. This was excepted to by defendant's counsel. The court added, that it appears in this case that the person injured was a boy between eight and nine; but notwithstanding this, if he was capable of exercising as high a degree of care and caution in respect to crossing a railroad as can reasonably be expected from adult persons, then the same rule should be applied. But, looking at the case as the person injured in fact was as to age and intelligence, was he in the exercise of ordinary care and caution in going on the railroad track? If he was not, but on the contrary was guilty of negligence in doing so, and by reason thereof was killed, no recovery can be had, notwithstanding the defendant was running the engine in violation of the regulations of law. The first clause of this sentence was also excepted to by defendant. The court continued, in immediate connection with the above paragraph, to state that if the person injured was of such tender years as to be unfit to be allowed to go alone in such a place, not capable of exercising ordinary care, it was negligence on the part of those having

him in charge to allow him to do so; and if the injury is occasioned or contributed to by reason of his inability to use and exercise ordinary care, the plaintiff cannot recover. In respect to the care and diligence which the law requires a person to exercise in approaching and crossing a railroad track, the court further remarked, that as a general proposition it is the duty of every person going upon or across railroad tracks to look each way to see if a train is approaching; that common prudence demanded this degree of care; but whether the boy did so, and saw the approaching train, or whether, failing to do so, he was excused under the circumstances, were questions for the jury in determining whether there was contributory negligence. This last paragraph was also excepted to by the defendant's counsel.

It seems to us that the law in respect to contributory negligence was laid down by the court with accuracy and sufficient precision. It appears to us it would be incorrect to say, as a proposition of law, that if the child was capable of exercising the same degree of care with respect to crossing the track as could reasonably be expected from an adult, then he was guilty of such negligence as prevented a recovery. This is to shut out of view all the circumstances attending the transaction which might possibly prevent an adult, in the exercise of ordinary prudence, from avoiding the injury. The general rule as to the duty of a person crossing a railroad track to look about him, and not to rush blindly into danger, was stated by the court. But certainly, in determining the question of contributory negligence, it would be proper for the jury to consider the situation of the different tracks at that crossing; the fact that cars were standing on the tracks of the Iron Company, which to some extent cut off the view of the approaching engine and tender on the defendant's track; the fact that this engine was backing down the track at an unlawful speed, which might well deceive one calculating the chances of a safe crossing; and the further fact that a train was coming in the op-

posite direction on the St. Paul road, which might divert the attention.    These facts would all enter into the consideration of the question whether a person would be excusable in not seeing the approaching engine; and therefore a want of due care could not necessarily be predicated upon the mere circumstance that the boy did not see the engine, if such was really the case. · The court was consequently right in declining to instruct that a failure to see the engine at all was in and of itself such evidence of fault or neglect as to prevent a recovery. Common prudence, the court said, requires that a person about to cross a railroad track should look each way to see if a train is approaching; and the question was fairly submitted, whether in the present case the boy did see the approaching train, or whether, failing to do so, he was excused under all the circumstances attending the transaction.    This statement of the law was substantially accurate and proper, in view of the evidence.

The court likewise gave to the jury a definition of what would constitute negligence on the part of those having charge of the boy, if he was unfit to be allowed to go alone in such a place, and was incapable of exercising ordinary care.    In that case the court told the jury that it would be negligence on the part of the mother to allow him to go to the crossing alone ; and that if the injury was occasioned or contributed to by reason of his inability to use and exercise ordinary care, the plaintiff could not recover.    In the ninth request, refused, a failure to caution the boy to use care in crossing the tracks was made such evidence of negligence as to prevent a recovery, which we think would have been error, if given.    A still further criticism is made upon that part of the charge where the court, after laying down the rule of diligence in respect to adults, remarked that if the boy was capable of exercising as high a degree of care and caution as an adult, then the same rule of responsibility should be applied to him.    This, it is said, carries an implication that if the boy was incapable of exercising that high degree of caution, he would not be in fault if he failed to use

ordinary care and diligence. But we think the language of the charge, fairly construed, would not give any such erroneous impression. For the jury were told that, regard being had to the age and intelligence of the boy, they were to determine from the evidence whether he was in the exercise of ordinary care and caution in going or to the railroad track.

We have not noticed all the exceptions taken to the charge as given, and to refusals to charge as requested; but we believe the above observations sufficiently dispose of all the material ones, excepting the objection taken to that portion of the charge relating to the duty of the company in running its trains across the street where the boy was killed. This street or highway was within the incorporated limits of the city of Milwaukee, and has been for eighteen or twenty years. Mr. Aldrich testified that he has lived in the neighborhood for about forty years, and that he has known the *locus in quo* to have been used as a highway for thirty-nine years. He said the road has been used for a highway for all teams and all sorts of travel, carriages, omnibuses and everything, both before and since it was included within the city limits. Sec. 43, ch. 119, Laws of 1872, provides that all railroad companies in this state, whenever their track crosses a public highway, shall put up large sign boards at or near said crossing, with the following inscription on both sides of such boards, in large letters: "Look out for the cars." In all incorporated cities, the said companies shall cause the bell on the engine to be rung before crossing any of the streets of a city, and their trains shall not go faster, until the same have passed all traveled streets of said city, than at the rate of six miles per hour. Sec. 41, ch. 79, R. S. It was an undisputed fact in the case, that the engine was running at the rate of from ten to fifteen miles an hour when it passed the crossing where the accident happened; and there was evidence sufficient to carry the question to the jury, we think, that the bell was not rung. The circuit court charged that the crossing or road in question was one of the traveled streets of

the city of Milwaukee, within the meaning of the law, and that the defendant had not the right to run its trains or cars faster than at the rate of six miles per hour until it had passed all such streets, and that to do so was negligence on the part of the defendant.   The counsel for the company contend that this was an erroneous construction of the statute.   They insist that it refers to ways dedicated as streets, by the recording of plats, or such as have been laid out or adopted as streets by the municipal authorities, and was not intended to apply to a public. highway which has not been so dedicated, laid out or adopted, though it is included within the corporate limits.   We fail, however, to see any ground or valid reason for making this distinction in the application of this provision.   Its object is manifest, and it is to diminish the chances of collision and loss of life by requiring trains to be run at a low rate of speed within the limits of a city, and while crossing highways where persons are constantly passing.   For that purpose it is made the duty of the company to cause the bell on the engine to be rung before . crossing the streets; and the trains are prohibited from running faster than at the rate of six miles an hour until they have passed all the traveled streets of the city.   It is obvious that trains running at a low rate of speed are much more readily checked and kept under control than when going at a high rate, and the danger of collision with teams and persons on the highways is accordingly diminished.   A highway by user is as likely to become a crowded thoroughfare as a street dedicated, or legally laid out, and there is as great necessity for approaching it with caution and slackened speed.   The statute makes no distinction as to the traveled streets of the city, and the courts are certainly not warranted, either by the spirit or letter of the provision, in making any.   The highway in question is an actually traveled street within the city limits, and we are entirely clear that the statute applied to it.   It was an act of negligence for the engineer to cross it with the engine and tender faster than at the rate of six miles an hour; and in all

Ewen vs. The Chicago & Northwestern Railway Company.

probability this was the cause of the accident. Whether the engine might lawfully be run faster than this up to the southerly boundary of the street crossing, is immaterial to this inquiry. Surely it could not be run at a higher rate across the street without a violation of this statute. *Martin v. The Western Union R. R. Co.*, 23 Wis., 437.

The court gave the instructions asked in regard to the measure of damages. The jury found a verdict for $2,500. It is claimed that this is excessive, and exceeds any fair and just estimate of the pecuniary injury resulting to the mother from the death of the child. We have already remarked that juries are not held to any fixed and precise rules in estimating the damages in this class of cases. If the injuries are pecuniary, they may be compensated, from whatever source they proceed. *Tilley v. The Hudson R'y*, 29 N. Y., 252; *Potter, Adm'r, v. The C. & N. W. R'y Co.*, 22 Wis., 615. It is impossible to say that $2,500 will more than indemnify the mother for the pecuniary benefit which she might reasonably have expected from the services and support of her son had his life continued. In the Potter case, Mr. Justice PAINE remarks that courts will not set aside the verdict for excessive damages unless they are so excessive as to be evidence of prejudice, partiality or corruption in the jury. What the boy would have earned, and how much money he might have devoted to the support of his mother, we cannot say. The jury had the right to take into account these matters in estimating the damages. We think we cannot interfere with the verdict on the ground that the damages are excessive.

*By the Court.*— The judgment of the circuit court is affirmed.