LANGHOFF, Adm'r &c., vs. THE MILWAUKEE & PRAIRIE DU CHIEN RAILWAY COMPANY and another.

A judgment of nonsuit in an action against railway companies under sections 25 and 41, chap. 79, R. S., for injury to the person resulting in the destruction of life, alleged to have been caused by the running of trains within the limits of a city at an unlawful rate of speed, is reversed on the ground that there was no such clear and decisive evidence of negligence on the part of the deceased at the time of the injury and contributing to it, as authorized such a judgment.

Negligence is, in general, a conclusion from the facts given in evidence, to be drawn by the jury, under proper instructions from the court.

In actions for injuries caused by negligence, it is only where there is an entire absence of evidence tending to establish the case, or where the negligence of the party injured is affirmatively and clearly proved by the plaintiff, so as to admit of no doubt or controversy, that a nonsuit may properly be ordered.

Although one who knows that a train of cars is moving at a greater rate of speed than is lawful, is not authorized to go upon the track or attempt to cross merely because he might do so with entire safety if the cars were moving at only a lawful speed; still he has a right to assume that the train is moving at a lawful rate until the contrary is made apparent; and the fact that the speed was unlawful must therefore be considered in determining the question of negligence.

APPEAL from the Circuit Court for *Rock* County.

This action was brought by *Herman J. Langhoff*, as administrator of the estate of *Mary E. Langhoff*, deceased, against the *Milwaukee & Prairie du Chien* and the *Chicago & North-Western Railway Companies*, to recover, under the statute, for the killing of the said Mary by trains on defendants' roads at a street crossing in the city of Janesville, through the negligence, as is alleged, of defendants' servants, and while said

trains were running at an unlawful rate of speed, and racing with each other upon adjoining tracks at said crossing. The separate answers of the defendants deny most of the material averments of the complaint, and allege negligence on the part of the deceased.

On the trial the plaintiff introduced evidence tending to establish the following facts: From the railroad crossing on St. Mary's Avenue (where the accident occurred), it is nine or ten rods north to a cattle guard, about eighty rods to a whistling post, and about half a mile to the northern limit of the city. At the crossing the tracks are about seven and a half feet apart, the track of the Milwaukee road being on the west; but they diverge from that point northward, and a short distance beyond the cattle guard diverge quite rapidly, so that at the whistling post they are some eight or ten rods apart. The deceased lived on St. Mary's avenue, a short distance east of the tracks. A short time before the accident she went to the house of a Mrs. Hughes on the same avenue, west of the tracks, for the purpose of getting a cup of milk; did not sit down, but on receiving the milk started immediately to return home, where she had an infant about a year old, and other children. Just after she started to go home, Mrs. Hughes heard the train coming, and stepped to her front door, and looked toward the crossing. She saw the deceased at a point which was afterwards found to be 140 feet east of Mrs. Hughes's house, and 219 feet west of the east rail on the track of the Milwaukee road. Deceased at once commenced running from this spot. "When in the hollow on this side of the tracks," Mrs. Hughes testifies, "with her face in the direction of the approaching cars, which were in her full view, she looked over her left shoulder back towards my house. I do not know the occasion of her looking back." Still running she crossed the last mentioned track; but her clothing was caught and partially torn off by the cow-catcher on the Milwaukee train, and she was found lying between the tracks, so

injured that she ·expired a few minutes afterwards. Mrs. Hughes saw only the Milwaukee train; and from where she stood (in her front door) could not see it until it reached the crossing. Outside of her house, trains approaching from the north could be seen for a considerable distance. "A person coming from the west to this road crossing could see both trains when close to the track; might see both coming when within ten rods of the track." The two trains ran side by side from the northern limit of the city until they reached said crossing, at the rate of about twenty-five miles per hour. There was a difference of opinion among the witnesses as to which engine was ahead when the trains reached the crossing; but all testified that they were very nearly abreast. "The surface of the ground from Mrs. Hughes's house to the crossing is quite even. It is prairie, with a slight pitch across the tracks."

The circuit court, on motion of the defendants, nonsuited the plaintiff, on the ground that the evidence showed negligence on the part of the deceased; and the plaintiff appealed.

*John Winans*, for appellant, argued from the evidence that the deceased saw only the Milwaukee train approaching; that she crossed the track so as to clear that train, but was stopped by the Chicago train, and while standing between the two, and perhaps shrinking back in affright from the last mentioned train, her clothing was caught by the cow-catcher of the Milwaukee train. He further contended that deceased, when she saw the train approaching, before starting to run, had a right to presume that it was approaching at only a lawful rate of speed (*Williams v. O'Keefe*, 24 How. Pr. R., 16; *Hegan v. 8th Av. R. R. Co.*, 15 N. Y., 380), in which case she could have crossed in perfect safety; that the question of negligence should have been left to the jury (*McGrath v. Hudson River R. R.*, 32 Barb., 147); that in case of gross negligence on the part of the defendants, a recovery should not be prevented by proof of slight negligence on the part of the deceased (*McGrath v. R. R., supra; Stucke v. Mil. & Miss. R. R.*, 9 Wis., 202, 215,

220; *Galena & Ch. Union R. R. v. Jacobs*, 20 Ill., 478; *Bernhardt v. Rensselaer & Saratoga R. R.*, 32 Barb., 165; *Wilds v. Hudson River R. R.*, 33 id., 503); and that where defendants were engaged in a willful violation of law, mere negligence on the part of the deceased in the performing of a lawful act, should not defeat a recovery. *McCall v. Chamberlain*, 13 Wis., 637.

*E. G. Ryan*, on the same side, argued, among other things, as follows: Conceding that an affirmative fact proved by the plaintiff and fatal to his case would warrant a nonsuit, such was not the case here. Negligence is not a fact, but a conclusion of fact. There are *dicta* to the contrary, but it is submitted that they are ill considered and in violation of principle. Negligence cannot be testified to as a fact, but can only be inferred from the *res gestœ*. What would be negligence under some conditions of fact would not be negligence under other circumstances. And it is peculiarly the province of juries to bring to bear on such and similar questions that practical knowledge of life and its occupations and accidents, which is supposed to lie with laymen rather than with jurists. A judge at *nisi prius* may nonsuit on facts or the absence of facts; but he can draw no conclusion of fact. A nonsuit resting on a conclusion from facts in evidence is essentially bad. Under the ruling of this court in *Stucke v. The M. & M. R. R. Co.*, 9 Wis., 202, the proper course in a case like this seems to be, to give to the jury the facts tending to establish negligence in both parties, with proper instructions as to what constitutes negligence, what negligence of the defendant will charge him, and what negligence of the plaintiff will defeat him; and to leave the conclusions of fact to the jury. 2. If the question of fact is to be argued here, the plaintiff denies that the intestate was guilty of negligence. Every person dealing with a corporation has a right to assume that the corporation will not exceed its franchise. Every person dealing with another has a right to assume that such other will not violate the law. And

this is not negligence, though the corporation in fact exceed its franchise, or the individual in fact violates the law.   This intestate may have heard, may have seen, the trains approach-ing.   She had a right to assume that they were so approaching at not exceeding six miles an hour.   R. S., ch. 79, sec. 41.   If she saw them, she had a right to calculate their distance.   If she heard them, she knew they were so distant that she had time to cross the track in safety.   *Williams v. O'Keefe*, 24 How. Pr. R. 16 ; *Hegan v. R. R. Co.*, 15 N. Y., 380.   Even if she saw them from where she was, almost directly approaching her, it is not to be supposed that she could judge of their rate of speed, or correct the presumption of law by her eyes.   The evidence conclusively shows that if the trains had been con-fined to the legal rate of speed, she would have had ample time to have crossed both tracks in safety.   Having once formed the legitimate conclusion that she could thus cross, subsequent negligence cannot be imputed to her.   No law of prudence requires us constantly to review our conclusions of conduct.   Such a habit would tend to vacillation and hesita-tion, which, in the presence of danger, are dangerous.   For the intestate to have kept her attention fixed upon the trains would have been not prudence but imprudence.   Running down a rough road with a cup of milk in her hand, she was not bound to run the risk inevitable upon a continued obser-vation of the approaching trains.   But if this were otherwise, when she reached the crossing the trains were still so far from it that she could have crossed in safety had they been running at lawful speed.   This presumption of law she was not in a position to correct in fact.   And the whole argument again applies to her final resolution to cross, if indeed she formed such a resolution.   See particularly 15 N. Y., 380, already cited.   But who can say that she did?   Who can interpret the back-ward look ?   Was it an expression of danger, or was it the assurance of security ?   Did it say that her speed had been in vain to avoid danger, or did it express a sense of successful

effort ? Was it an act of reason, or bewilderment amounting to insanity ? Did the intestate go upon the track in a secure sense of the distance of the trains, running as she thought at six miles an hour? Or was her body in such motion that she could not arrest her progress, and that it seemed, to her, death to attempt to stop, and escape to keep on ? We cannot tell. We only know that, when she reached the crossing, she found the trains much nearer than she had a right to expect. If she did not see the danger, we have shown that she was not chargeable with negligence ; for the danger arose exclusively from the unlawful speed of the trains. If she saw the danger ; if, justly expecting to see the trains at a safe distance, she found them rushing at frightful speed down the crossing, to which her running speed was conducting her; if the surprise and fright, the rushing and deadening clamor of two long trains running side by side on a down grade, at thirty miles an hour—if all these overpowered her spirits and bewildered her mind, is this negligence? Is it negligence to faint or lose presence of mind, before a sudden danger ? Before an unlawful danger ? Before a danger then and there existing by the wanton disregard of a statute *in favorem vitæ*, by those who. set up this intestate's negligence in immunity for her blood ?

It is respectfully submitted that, some *dicta* to the contrary notwithstanding, between an utter wrong-doer and one in the ordinary exercise of a mere right, in an action for injury by one to the other, there is no question of negligence. Crime is unjustified by negligence of its victim. And this homicide was a crime, for which those responsible for the speed of the trains were clearly indictable.

*McCall v. Chamberlain*, 13 Wis., 637, is a direct authority in support of this whole view of the case.

Counsel also contended, at length, that under sec. 25, ch. 79, there was a remedy against the company into which the question of negligence did not enter, and that the complaint was framed on this statute.

*Finches, Lynde & Miller,* for the *Milwaukee and Prairie du Chien Railway Co.:*

1. It is settled by all the authorities that a voluntary act or omission of a party which contributes to an injury resulting from another's negligence, which might have been avoided by ordinary care and prudence, is a bar to the action.  7 Wis., 527, 425; 6 Gray, 64; 1 Allen, 187; 3 id., 21; 4 id., 283; 18 How. Pr. R., 429; 24 id., 97; 13 Barb., 9; 25 id., 600; 27 id., 221; 31 id., 419; 33 id., 429; 36 id., 217; 18 N. Y., 422; 24 id., 430; 1 Dutcher, 556; 4 Zabrisbie, 268; 24 Pa., 465; 33 id., 318; 23 id., 147; 32 Me., 49; 29 Conn., 208; 2 McMullen, 403; 8 Richardson, 126; 13 Iredell, 253; 10 id., 402; 13 Ill., 591; 26 id., 255, 373; 98 Eng. Com. Law, 566; 97 id., 287.  2. It being apparent from the testimony offered by the plaintiff, that Mrs. Langhoff's own carelessness and negligence directly contributed to produce the injury she received, it was the duty of the court to grant a nonsuit.  13 Barb., 9; 1 Dutcher, 556; 2 McMullen, 403; 5 Barb., 337; 33 id., 429; 27 id., 534; 24 How. Pr. R., 98; 18 N. Y., 422; 24 id., 431; *Achtenhagen v. City of Watertown,* 18 Wis., 331.  3. Counsel argued that damages could not be recovered of a railroad company under secs. 25 and 41, ch. 79, R. S., for a destruction of life caused by running trains within the limits of a city at a greater speed than six miles an hour, if it appears that the injury would not have occurred without gross negligence on the part of the person injured; citing 27 Barb., 228; 25 id., 603 18 N. Y., 422; 8 Met., 392; 12 id., 419.

*Eldredge & Pease,* for *Chicago and N. W. Railway Co.;*

It is the duty of a court to nonsuit a plaintiff when the evidence adduced by him will not authorize the jury to find a verdict in his favor, or if the court would set aside such a verdict as contrary to evidence.  *Stuart v. Simpson,* 1 Wend., 376; *Demyer v. Souzer,* 6 id., 436; *Wilson v. Williams,* 14 id., 146; *Doane v. Eddy,* 16 id., 523; *Carpenter v. Smith,* 10 Barb., 663.  Where the evidence on the part of the plaintiff merely

establishes a possibility of the facts upon which his case de-. pends, it is the duty of the court to grant a nonsuit. As a matter of law, the plaintiff is deemed to have failed to prove his case. *Morrison v. N. Y. and N. H. R. R. Co.*, 32 Barb., 568. The subject of this action being negligence, it became necessary,. to entitle the case to go to the jury, for the plaintiff to show affirmatively the culpability of the defendants, and that their negligence was the cause of the death of the deceased; and also to present a state of facts which would show, presumptively or inferentially at least, that the deceased was guilty of no negligence which contributed to the event. But if, on the contrary, it appears by such showing that the deceased was negligent, and that her negligence contributed to the injury, it is the duty of the court to nonsuit the plaintiff. *Butterfield v. Forrester*, 11 East, 60; *Smith v. Smith*, 2 Pick., 621, and cases cited in note; *Lane v. Crombie*, 12 id., 177; *Ellis v. Short*, 21 id., 142; *Button v. The Hudson River R. R. Co.*, 18 N. Y., 248; *Johnson v. The Hudson River R. R. Co.*, 20 id., 65; *Wilds v. The Same*, 24 id., 430; *Steves v. O. and S. R. R. Co.*, 18 id., 422; *Brooks v. R. R. Co.*, 25 Barb., 600; *Bieseigal v. N. Y. Cent. R. R.*, 33 Barb., 429; *Ernst v. The Hudson River R. R. Co.*, 24 How. Pr. R., 97; *Dressler v. Davis*, 7 Wis., 527; *Mil. and Ch. R. R. Co. v. Hunter*, 11 id., 160 : *Achtenhagen v. City of Watertown*, 18 id., 331. It was not enough to entitle the plaintiff to recover, that he established the fact that the trains were running at a speed greater than six miles an hour. 18 N. Y., 425; *Chi. & N. W. Railway Co. v. Goss*, 17 Wis., 428.

*By the Court*, DIXON, C. J. We reverse the judgment . and remand the cause for a new trial, on the ground that there was no such clear and decisive evidence of negligence on the part of the deceased, Mrs. Langhoff, at the time of the injury and contributing to it, as authorized the court to nonsuit the plaintiff, or take the case from the jury. What constitutes

negligence, or that want of care on the part of the person re-
ceiving the injury which deprives him of any remedy, and
neutralizes, as it were, the wrong of the party by whom the
injury is inflicted, is a question depending on various circum-
stances.    What may be negligence under some circumstances
and conditions, may not under others.    As observed by coun-
sel, it is not a fact to be testified to, but can only be inferred
from the *res gestœ*—from the facts given in evidence.    Hence
it may, in general, be said to be a conclusion of fact to be
drawn by the jury under proper instructions from the court.
It is always so where the facts, or rather the conclusion is fairly
debatable, or rests in doubt.    It is only where there is an en-
tire absence of evidence tending to establish the case, or where,
as in *Achtenhagen v. Watertown*, 18 Wis., 331, the negligence
of the party injured or killed is affirmatively and clearly
proved by the plaintiff, so as to admit of no doubt or contro-
versy, that a nonsuit may properly be ordered.    The negligence
of the defendants in this case—the unlawful and dangerous
speed at which their trains were being driven, and their com-
munity in the perpetration of the wrong, cannot, from the evi-
dence, be doubted.    Were we satisfied from the evidence that
the deceased knew the speed at which the trains were moving,
or that she could reasonably have calculated it, or that she
knew there were two trains running nearly side by side over
the two roads, instead of one over the road of the *Milwaukee
and Prairie du Chien Company*, then we might agree that the
nonsuit was proper.    But we are not satisfied of these things;
and because we are not, they are matters which should have
been submitted to the determination of the jury.    Certainly
some consideration is to be given to the circumstances that the
defendants were prohibited by law from running their trains
at a rate of speed not exceeding six miles an hour, and that if
the trains had been moving at that rate or less, the deceased
would have had ample time to pass the tracks unharmed and
without risk of harm.    Not that this circumstance would have

authorized the deceased, knowing the rate at which the trains were moving, to have gone upon the tracks or attempted to cross, regardless of her own life and safety, but that it might and probably did materially influence her judgment in determining whether it was safe and proper for her to do so. It must be assumed that she knew the law, and knowing it she might properly assume that the defendants were acting in conformity to its provisions. Seeing the trains at such a distance from the intersection of the street upon which she was passing, that she might safely cross if they had been moving at a lawful rate of speed, she might well have exercised less care and watchfulness, without the imputation of negligence, than if there had been no such limitation. It is not an easy matter for one standing upon or near the track to judge correctly of the speed of an approaching train. Again, if the deceased saw only the Milwaukee train, and knew its speed, and judged that she could pass over with safety, and judged correctly, and did so, and then was caught by the other train upon the adjacent track, which she did not see, and her life destroyed, can negligence be imputed to her? It seems to us not, and that upon this question, as well as the other, the case should have been submitted to the jury.

Judgment reversed, and a new trial awarded.

DOWNER, J., was absent in this case, deeming himself disqualified to sit by reason of his interest as a stockholder in the *Milwaukee & Prairie du Chien Railway Company.*