(Decided 16th February, 1876.)

THE BALTIMORE CITY PASSENGER RAILWAY COMPANY *vs.* ELLEN McDONNELL, by her next friend, THOMAS McDONNELL.

*Admissibility of evidence—Action for recovery of Damages for injury to a child—Father's Declaration inadmissible—Negligence—Degree of care required of a child—Violation of City Ordinance as bearing on the question of negligence—Watchfulness required of the Drivers of Street Cars in a populous city.*

In an action against a City Passenger Railway Company, to recover damages for an injury sustained by the plaintiff in being run over by a car of the defendant, the plaintiff offered in evidence an ordinance of the city regulating the speed of the cars on the route on which the plaintiff was injured. The evidence was objected to on the ground that no evidence had been offered to show that the car was running at a speed exceeding six miles an hour, (the rate allowed by the ordinance) at the time the accident happened. One witness had testified, that she did not know at what speed the car was running, but, that it was running faster than ordinarily, and that a man would have to run very fast to keep up with it. Another testified that she did not see the car coming but heard it, and from the sound of the bells she thought it was coming at full speed. HELD:

Balt. City Pass. Railway *vs.* McDonnell.

1st. That from this proof it was competent for the jury to determine whether or not the car was running at a rate of speed exceeding six miles an hour, and it suffciently laid the foundation for the introduction in evidence, of the city ordinance.

2nd. That even if the foundation was not thus sufficiently laid, and the Court erred in permitting the ordinance to be offered in evidence at that stage of the trial, such error would furnish no ground for a reversal, if evidence subsequently introduced, established the fact that the average rate of speed of the car was more than six miles an hour.

The defendant offered to prove, that in a conversation touching the accident, the father of the plaintiff, the latter being a small child, had stated that "he did not blame Mr. M., the driver, at all, and that the child was injured through a pure accident." The father was not present when the accident occurred; saw nothing of it, and had no knowledge of the particulars further than the information he derived from others. On objection it was HELD :

That the evidence was inadmissible.

If an injury result directly from the want of ordinary care and prudence on the part of the defendant or its agents, and not from the want of such care and prudence on the part of the plaintiff, as ought under all the circumstances, to be expected from one of his age and intelligence, or from want of ordinary care and prudence on the part of his parents, directly contributing to the accident, the plaintiff is entitled to recover.

A child, so far as he is personally concerned is to be held only to such degree of care as ought to be reasonably expected from children of his age and intelligence.

Nor will the plaintiff be prevented from recovering in consequence of the negligence of his parents, if the jury shall find that the consequences of such negligence could have been avoided by the exercise of ordinary care and prudence on the part of the defendant or its agents.

Where the plaintiff was injured by the defendant's street car, which at the time was running at a greater speed than was allowable under a city ordinance, it was HELD :

That the defendant was guilty of negligence, if the accident could have been avoided had the car not been running at a prohibited rate of speed.

In a large, populous city where all descriptions of vehicles are constantly passing and repassing, as well as persons on foot, including the aged and infirm, and children who are young, and wanting in prudence and discretion, it is the duty of drivers of cars, not only to see that the railroad track is clear, but also to exercise a constant watchfulness for persons who may be approaching the track.

APPEAL from the Circuit Court for Anne Arundel County.
This is an appeal taken by the defendant below, from a
judgment rendered against it in an action brought by the
appellee to recover damages for a personal injury. The
plaintiff, a child slightly over two years of age, ran in the
way of a passing car of the defendant, on one of the streets
of the City of Baltimore, and received the injury in ques-
tion.

*First Exception.*—The plaintiff, after producing evidence
of the happening of the accident, introduced the testimony
of a witness who stated that "she did not know the rate of
speed at which the car was going, but it was running faster
than ordinarily, and a man would have to run very fast to
keep up with it," and of another witness who testified that
"she heard the car coming, and from the sound of the bells
she thought it was coming at full speed." The plaintiff
then offered to read to the jury the ordinance of the Mayor
and City Council of Baltimore, prohibiting a greater rate
of speed than six miles per hour. The counsel objected to
the said ordinance being offered in evidence, upon the
ground that there was no sufficient evidence to show that
the car was running more than six miles per hour, and the
plaintiff's counsel did not accompany the offer with any
statement that they expected to offer any further evidence,
for the purpose of showing that the car was going at a rate
of speed exceeding six miles per hour. But the Court,
(HAYDEN and HAMMOND, J.,) admitted the said ordinance
to be read in evidence to the jury. The defendant excepted.

*Second Exception.*—After the introduction of other evi-
dence not necessary to be detailed, the defendant proved
by Thos. Jenkins, the agent in charge of the line of cars
running in Albemarle street, that Thomas McDonnell, the
next friend of the plaintiff, but who was not present at the
time of the accident, is the father of the plaintiff, that he
saw him on the night immediately succeeding the afternoon
of the accident, and that he had a conversation with him

in reference to how the said accident occurred, and then offered to prove that in the said conversation the said father and next friend of the plaintiff had stated "that he did not blame Mr. Mules, the driver, at all, and that the child was injured through a pure accident," but the plaintiff, by her counsel, objected to the admissibility of the said evidence for any purpose, and the Court, upon the objection of the counsel for the plaintiff, refused to allow the said conversation and statement to be given in evidence for any purpose. The defendant excepted.

*Third Exception.*—The plaintiff thereupon offered the five following prayers:

1. If the jury find from the evidence that the plaintiff was injured by being knocked down and run over by the car of the defendant, and that such injury might have been avoided by the exercise of ordinary care and prudence on the part of the defendant, or its servants or agents, then their verdict will be for the plaintiff, unless they shall find that the injury complained of resulted from the want of such care and prudence on the part of the plaintiff as ought, under all the circumstances, to have been reasonably expected from one of her age and intelligence, or from the want of ordinary care and prudence on the part of her parents, directly contributing to the accident.

2. If the jury find from the evidence that at the time of the accident, the car in question was being driven at a rate of speed greater than six miles per hour, in violation of the ordinance of the Mayor and City Council of Baltimore, and shall further find that if said car had not been running at a greater rate of speed than six miles per hour, the accident could have been avoided, then there was a want of ordinary care on the part of the defendant, as mentioned in the plaintiff's first prayer.

3. The plaintiff will not be prevented from recovering in consequence of any negligence on the part of the child's mother, if the jury shall find that the driver of the car in

question, by the exercise of ordinary care and caution, might have seen the child and stopped the car in time to have avoided the accident.

4. If the jury find for the plaintiff, in estimating the damages, they are to consider the health and condition of the plaintiff before the injury complained of, as compared with her present condition, in consequence of said injury, and whether the said injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those industrial pursuits and employments for which, in the absence of such injury, she would be qualified, and also the physical and mental suffering to which she was subjected by reason of the said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained.

5. In considering whether there was any negligence on the part of the mother, the jury should take into consideration her condition and state in life, her ability or inability to provide a nurse for her child, the household duties she had to perform; and they may also consider the natural affection of a mother for her child, and her desire to shield it from danger.

And the defendant offered the nine prayers, as follows:

1. If the jury shall find from the evidence in the cause that the plaintiff, at the time of the accident, was a child of such tender age as not to possess sufficient discretion to avoid danger, and that the said child was negligently suffered by her mother to be on the public highway in the City of Baltimore, where the cars of the defendant were in the habit of passing, without any one to guard her, and that the child, when on the public highway, suddenly got upon the track of the defendant, in front of the car of the defendant, and that the child was injured by a car of the defendant driven by an employé of the defendant, and that the said injury would not have occurred but for the negli-

gence of the mother of the said child, in suffering her to be on the said highway or street without any one to guard her, then the plaintiff is not entitled to recover.

2. If the jury shall find from the evidence in the cause that the plaintiff was a child of such tender age as not to possess sufficient discretion to avoid danger, and that the said child was suffered by its mother to be on Albemarle street, without any one to guard her, and that Albemarle street is a public thoroughfare in the City of Baltimore, and that the cars of the defendant were in the habit of passing along said street, and that the said child was liable to be injured in the said street, when there without any one to guard her, then it was *prima facie* evidence of negligence on the part of the mother of the said child, to suffer the said child to be in the said street without any one to guard it.

3. If the jury find that the plaintiff, at the time of said accident, was a child too young to take care of itself in a street, such as Albemarle street, but was allowed by those having charge of her to go out upon said street unprotected and unattended, and that said child thereupon ran in the way of the said car in a manner and under circumstances which amounted to negligence, and in consequence thereof, received the injury complained of, and that the driver, as soon as he perceived said child, endeavored to stop the said car, but was unable to do so in time, then the plaintiff cannot recover.

4. If the jury shall find that the plaintiff was an infant aged about two years and two months, and was in charge of its mother shortly prior to the injury, and in consequence of the negligence of the mother, she ran out into Albemarle street in the way of a car of the defendant, which was passing down Albemarle street, and that but for the negligence of its said mother, directly contributing to the accident, the accident complained of would not have occurred, then the plaintiff cannot recover in this action, but the verdict of the jury must be for the defendant.

5. If the jury shall find that at the time of the happening of the injury complained of, Albemarle street was one of the streets of the City of Baltimore, upon which the passenger railway cars of the defendant were accustomed to pass, and that the plaintiff was a child of two years and two months of age, and that said child was suffered by its mother to go upon said street unattended, and in consequence of being so unattended, ran upon the track of the defendant in front of said car, and that the driver of said car thereupon endeavored to stop the said car, but was unable to do so in time to prevent said child from receiving the injury complained of, and that if the said child had not been so suffered to go without attendance, that the accident would not have happened, then the verdict of the jury must be for the defendant.

6. If the jury shall find from the evidence in the cause, that the plaintiff, Ellen McDonnell, attempted to pass in front of the car of the defendant while the same was in motion, across the track of the defendant, and when the said car was so near the plaintiff as not to permit of the plaintiff passing safely across the defendant's track, then the plaintiff is not entitled to recover.

7. If the jury shall find from the evidence in the cause, that the plaintiff attempted to pass across the track of the defendant, in front of the car of the defendant while in motion, and when only a few feet in front of the said car, and was run upon and injured, she is not entitled to recover for the injury sustained; the attempt to pass across the track of the defendant, and in front of the said car while the car was in motion, and when only a few feet in front of the car, being such an act of carelessness as amounts in law to contributory negligence.

8. If the jury shall find from the evidence in the cause, that the plaintiff interposed herself in the way of the car of the defendant, when it could not be arrested in its course, and under circumstances where with ordinary care

on the part of the driver, the car could not be brought to a pause early enough to save the child from injury, the defendant is not liable.

9. If the jury shall find from the evidence in the cause, that the car which injured the plaintiff was driven at the time the accident occurred, at a rate of speed exceeding six miles per hour, in violation of the ordinances of the Mayor and City Council of Baltimore, then this fact is not sufficient to render the defendant liable unless they further find that the accident could not have occurred, if the car had not been going at a speed exceeding six miles per hour, and unless they also further find that there was no contributory negligence on the part of the mother of the said child, nor on the part of the plaintiff.

The plaintiff's fourth and fifth prayers were conceded.

The Court granted the plaintiff's first, second and third prayers, and the defendant's second, eighth and ninth prayers, but refused to grant its first, third, fourth, fifth, sixth and seventh prayers. The defendant excepted, the objection to the plaintiff's second prayer being based on alleged error of law, and also upon the ground that there was no sufficient evidence in the cause upon which to submit to the jury, to find that the car was being driven at the time when the accident occurred, at a greater rate of speed than six miles per hour.

The jury rendered a verdict in favor of the plaintiff, and assessed the damages at $4000 ; judgment was entered accordingly.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and GRASON, J.

*Daniel Clarke* and *Arthur W. Machen*, for the appellant.

The ordinance referred to in the first exception, is to be found in the City Code, section 39, page 585. When this

ordinance was offered, at the close of the plaintiff's case, there was no evidence that the car in question was going faster than at six miles an hour at the time of the accident ; and no further evidence was in fact afterwards introduced that the speed of the car in Albemarle street exceeded the prescribed rate.

It seems an error moreover, to regard the provision in question, as in the nature of a law it is criminal to violate. It is found in the organic ordinance of 1859, No. 44, and is one of the stipulations in the agreement between the City and the Company. No penal sanction is annexed to it, as there is to the requirement that every car shall run to the extent of the track. Whether the provision is observed, is a matter entirely between the City and the Company. While excessive speed may amount to a nuisance, to drive a little faster than six miles an hour is not excessive speed, any more than a rate a little less than that, is too slow. The limit is arbitrary, and the observance or transgression of it, does not concern third parties. The regulation creates no duty between the Company and individuals, the violation of which affords foundation for a right of action. *Canton Company vs. Flynn*, 40 *Md.*, 312.

As to the second exception : The declarations of the father, who was not only *prochein ami*, but *natural guardian*, ought to have been allowed to come in. Admissions by word or conduct, made by a guardian, are always admissible. It cannot fail to be recognized also, that the action is substantially the suit of the father. He is the party who institutes and prosecutes it, retains counsel, is responsible for costs, and will be substanially benefited by a recovery. It differs little from an action by husband and wife, for injuries sustained by the wife, in which admissions of the husband that there is no case, are clearly admissible. *Moriarty vs. London, Chatham and Dover Ry. Co.*, 5 *Q. B.*, 314, (*Law Rep.*)

The plaintiff's first prayer ought not to have been granted; but the plaintiff's third prayer, exhibits the present objection most obviously. The prayer assumes, as a matter of law, that it was the driver's duty to see the child, though not on the car track, nor close to it; and also, that if there was a child so anywhere in sight, it was his further duty then to stop at once and wait.

The granting of such a prayer was practically a direction to the jury to find for the plaintiff, or, if it was not so, it was at least calculated to mislead the jury, and, as it was availed of, doubtless did mislead them. When the car was thirty or forty feet off, and the child visible near the gutter, had the driver stopped and remained there, would the accident have happened? That was the question the instruction permitted the issue to turn upon. Of course it was undeniable, that if the car had been so stopped, and kept at a distance till the child left the street it would not have been run over. But was it legally incumbent on the driver so to stand still, the child not then being in the track, and nothing appearing to indicate that it was going to attempt to cross it? We submit it was not. *Frech vs. Phila., Wilm. & Balt. R. R. Co.,* 39 *Md.,* 579, 580; *Singleton vs. Eastern Counties Ry. Co.,* 7 *C. B., N. S.,* 287.

The plaintiff's second prayer, besides being objectionable on the grounds noticed under the first exception, is liable to further objection. It does not present the point which it might be supposed would be intended to be presented upon the ordinance, namely: that if the accident was directly attributable to the use of a greater rate of speed than six miles an hour, the defendant was guilty of negligence; but instead its language is, if the jury find "that if the car had not been running at a greater rate of speed than six miles per hour, the accident *could have been avoided,*" then there was that want of care on the defendant's part, which entitled plaintiff to recover. Now it is

conceivable, quite consistently with the facts to be found under the prayer, that the accident *could have been avoided*, had the car been running faster than six miles an hour. Upon the theory that the case turned upon the ordinance, the inquiry put to the jury should have been, was the excess of speed the *cause* of the accident, so that if the car had been running at a rate not exceeding six miles per hour, it would not have occurred, even though all the other circumstances had been the same, and so did occur because the car was running faster than at that rate.

If the disregard of such a requirement can ever be considered as constituting a breach of duty as between an individual and the company, certainly the jury must be distinctly instructed that the company is only liable when the accident is directly referrible to the breach of the ordinance, and caused by it; and the facts must justify such a conclusion. *State, use of Geis, vs. B. & O. R. R. Co.,* 31 *Md.,* 365; *McMahon vs. N. C. Ry. Co.,* 39 *Md.,* 453.

The prayer was *specially* objected to because of the *want of evidence* that the car was being driven at greater speed than six miles an hour.

The plaintiff was identified with her mother, and the failure of the mother to exercise proper care being the cause of the child's being in the street, and thus directly contributing to the accident, the plaintiff cannot recover. In the language of Justice VAUGHAN WILLIAMS, " the person who has charge of the child is identified with the child," *(Waite vs. N. C. R. Co., E. B. & E.,* 734,) and in the well considered language of this Court, *(B. & O. R. R. Co. vs. State, use of Fryer,* 30 *Md.,* 53,) "the negligence of the parent, or other person having the legal control of the child at the time, would be so far imputed to the latter as to form a defence to the action." The law is well settled in this State, as well as in England and other States, whose decisions are entitled to most respect. *Bannon vs. B. & O. R. R. Co.,* 24 *Md.,* 125; *Wright vs. Malden & Melrose*

*R. R. Co.*, 4 *Allen*, 283 ; *Callahan vs. Bean*, 9 *Allen*, 401 ; *Holly vs. Boston Gas Light Co.*, 8 *Gray*, 132 ; *Hartfield vs. Roper*, 21 *Wend.*, 615 ; *Kreig vs. Wells*, 1 *E. D. Smith*, 76, 77 ; *Mangam vs. Brooklyn City R. R. Co.*, 36 *Barb.*, 230, and 38 *N. Y.*, 455 ; *Brown vs. European & N. Amer. Ry. Co.*, 58 *Maine*, 388 ; *Shear. & Red. on Negl.*, sec. 48 ; *Honegsburger vs. The Second Avenue Railroad Company*, 33 *How. Pr. Rep.*, 193.

Consequently the defendant's first, third and fourth prayers should have been granted.

The defendant's fifth prayer is even less open to objection, because it requires the jury distinctly to negative any want of care on the driver's part to avoid injuring the plaintiff after she got upon the track. Under the circumstances of this case this qualification to the prayer was not necessary, as there was nothing in the evidence to show that the driver had time or opportunity to avoid running against the child after it got in the way of the car and horses. See *N. C. Ry. Co. vs. State, use of Geis*, 31 *Md.*, 366.

The defendant's sixth and seventh prayers, also should have been granted. For the same reasons the plaintiff's prayers ought to have been refused. The plaintiff's third prayer, especially, is directly in the teeth of authority, in asserting that the plaintiff, in the care of a very young child like this, "will not be prevented from recovering in consequence of *any* negligence on the part of the child's mother," if the jury find that the driver also was negligent. Concurrent and co-operating negligence of the parent must prevent recovery. *McMahon vs. N. C. R. Co.*, 39 *Md.*, 453.

*W. A. Hammond*, for the appellee.

There was ample evidence that the speed was more than six miles per hour. But even if the testimony contained in the first bill of exceptions was not sufficient, it was supplemented by that of the driver, Mules, who said that they

had thirty-eight minutes in which to run four miles, thus necessitating a speed of $6\frac{3}{10}$ miles per hour without allowing for stoppages, which being numerous, would require a running speed of a much greater rate. With this testimony there could be no possible doubt of the admissibility of the ordinance, so that the appellant has sustained no injury, even if this Court should be of opinion that the testimony contained in said exception did not lay a sufficient foundation for its admission at the time it was offered.

The second exception presents the question, whether a statement made by Thomas McDonnell, the father of the plaintiff, in regard to the accident, and upon the evening of its happening, was admissible in evidence, it being shown that he was not present at the time of the accident, and knew nothing personally in regard to it. It must be manifest that this testimony was purely hearsay. It was a statement made by a person not a party to the cause, about a matter of which he had no personal knowledge. Nor can the fact that the party allowed his name to be used as next friend of the plaintiff, when this suit was instituted several months afterwards, make any difference.

Declarations of an administrator, made before letters granted, are not admissible against him in his capacity as administrator. *Mangum vs. Webster & Baynes,* 7 *Gill,* 81 ; *Dent, Adm'x vs. Dent,* 3 *Gill,* 482.

The third exception arises upon the prayers. The plaintiff's first prayer was properly granted. It was approved by this Court in *Fryer's Case,* 30 *Md.,* 47, and in *McMahon's Case,* 39 *Md.,* 451. See *Shearman & Red. on Neg.,* sec. 49.

The plaintiff's second prayer left it to the jury to say whether the car was running at a prohibited rate of speed, and if so, whether the accident might have been avoided if the speed had not been greater than six miles per hour. There was ample evidence from which the jury might find that the speed was beyond six miles per hour, as has been

shown in discussing the first exception; and if such was the case, then the fact, that by the driver's exertions the car did not pass over the child, but stopped with the front wheel resting upon her shoulder, would show conclusively that the same exertions, with a less rate of speed, would have stopped the car short of the child and avoided the accident altogether. "If the defendant was not conforming to the ordinances of the city, the utmost diligence was requisite, and it was responsible, at all hazards, for any accident occasioned by it, unless the other party was also in fault." *B. & O. R. R. vs. Miller,* 29 *Md.,* 261; *Owings vs. Jones,* 9 *Md.,* 108; *B. & O. R. R. vs. Breinig,* 25 *Md.,* 389.

The plaintiff's third prayer is directly in accordance with several cases decided by this Court. *Frech vs. Phil. W. & B. R. R.,* 39 *Md.,* 574; *McMahon's Case,* 39 *Md.,* 452; *Fitzpatrick's Case,* 35 *Md.,* 44; *Vide also — Smith vs. O'Connor,* 12 *Wright,* (*Penn.,*) 218; *Isbell vs. R. R. Co.,* 27 *Conn.,* 404; *Needham vs. S. F. & S. J. R. Co.,* 37 *Cal.,* 409-420.

The fourth and fifth prayers of the plaintiff were conceded.

According to the theory of the defendant's first prayer, if the plaintiff got into the street through the negligence of its mother, the defendant was not required to take even ordinary care in reference to its safety; but might run her down and kill or cripple her with impunity. This Court has frequently repudiated any such proposition. *Fryer's Case,* 30 *Md.,* 47; *Trainor's Case,* 33 *Md.,* 542; *McMahon's Case,* 39 *Md.,* 452; *Daley vs. Norwich & Worcester R. R. Co.,* 26 *Conn.,* 591.

To prevent recovery, the negligence of the parent must be the direct and immediate cause of the injury. *Lynch vs. Nurdin,* 1 *Q. B.,* 29, (41 *E. C. L.,* 422.)

The third prayer of the defendant was defective in two particulars. It failed to prescribe the degree of diligence

and care required of a child of two years and two months old, thereby misleading the jury as to what would be negligence on her part. And secondly, it did not require the driver to have been on the look-out. It was not enough for the driver to endeavor to stop as soon as he perceived the child, if he was not attending to his business, and consequently failed to see the child, when by the exercise of reasonable care he might have seen her in time to have avoided the accident.

The same faults are to be found in the fourth, fifth, sixth, and seventh prayers. They all endeavor to fix contributory negligence upon an infant of two years and two months of age, by an attempt to cross the track of the defendant in front of the car; and this in the teeth of their own testimony, that a child of that age possesses no judgment or discretion to enable it to avoid danger.

The driver of a car may well act upon the presumption, that a person of ordinary intelligence will not step upon the track immediately in front of a car; but when he sees, or by the exercise of ordinary care in keeping a look-out, might see, a baby two years old walking by itself immediately towards the track in front of his horses, he has no right to act upon any such presumption—or if he sees a child of that age upon the track, he cannot presume that it will step out of the way as "a person laboring under no disability" would do. *Frech's Case,* 39 *Md.,* 580; *Robinson vs. Cone,* 22 *Verm.,* 213; *Rauch vs. Lloyd,* 31 *Penn. State,* 358; *Smith vs. O'Connor,* 12 *Wright,* (*Penn.,*) 218.

The whole question was fully presented to the jury by the plaintiff's prayers, and most favorably for the defendant by its eighth prayer, which was granted.

It surely could ask no more than that the plaintiff should be debarred from recovering, "if she interposed herself in the way of the car, when it could not be arrested in its course, and under circumstances where, with ordinary care on the part of the driver, the car could not be

brought to a pause early enough to save the child from injury," *Springett vs. Ball*, 4 *Foster & Finl.*, 472 ; *Railroad Co. vs. Gladmon*, 15 *Wal.*, 401 ; *B. & I. R. R. Co. vs. Snyder*, 18 *Ohio St.*, 399–408 ; *Schmidt vs. M. & St. Paul R. R. Co.*, 23 *Wis.*, 186.

The defendant's fourth prayer was calculated to mislead the jury. The facts stated in it, viz : that the child was in charge of its mother, and in consequence of the negligence of its mother ran into the street, were not sufficient to show a case of directly contributing negligence on the part of the mother ; and yet such was the effect of the instruction. Besides, there was a total failure of evidence to show any negligence on the part of the mother *directly contributing to the accident. Dougherty's Case*, 36 *Md.*, 366 ; *Phila. & Reading R. R. vs. Long, Amer. Law Times, April,* 1874, *page* 169 ; *Chicago & Alton R. Co. vs. Gregory*, 58 *Ill.*, 226 ; *Ihl vs.* 42 *St. R. R. Co.*, 47 *N. Y.*, 317–23 ; *O'Flaherty vs. Union R. Co.*, 45 *Mo.*, 70

The case of *Hartfield vs. Roper*, 21 *Wend.*, 615, and the Massachusetts cases to the same effect, are not sound on principle, and have been expressly repudiated by this Court in *Fryer's Case*, 30 *Md.*, 47.

The authorities above quoted, also show that they are in conflict with the law as recognized and adopted by repeated decisions, not only in England, but in Pennsylvania, Vermont, Connecticut, Ohio, Illinois, Wisconsin and California, and in the Supreme Court of the United States.

GRASON, J., delivered the opinion of the Court.

At the trial of this case in the Court below, three exceptions were taken, the first to the admission in evidence of the ordinance of the Mayor and City Council of Baltimore, regulating the speed of the appellant's cars on the route on which the plaintiff was injured ; the second to the refusal of the Court to permit to be offered to the jury, the declaration of the father of the plaintiff, that the in-

jury to the plaintiff "was the result of an accident, for which the driver of the car was not to blame," and the third to the granting of the three first prayers of the plaintiff, and the rejection of the first, third, fourth, fifth, sixth and seventh prayers of the defendant.

1st Exception.—The admissibility of the ordinance of the Mayor and City Council was objected to, on the alleged ground, that no evidence had been offered, that the car was running at a speed exceeding six miles an hour at the time the accident happened. One witness had testified that she did not know at what speed the car was running, but that it was running faster than ordinarily, and that a man would have to run very fast to keep up with it. Another testified that she did not see the car coming, but heard it, and, from the sound of the bells, she thought it was coming at full speed. From this proof, it was competent for the jury to determine whether or not the car was running at a rate of speed exceeding six miles an hour, and it sufficiently laid the foundation for the introduction in evidence of the City ordinance. But even if the foundation was not thus sufficiently laid, and the Court erred in permitting the ordinance to be offered in evidence at that stage of the trial, the defendant was not injured by the ruling of the Court, because Mules, the driver of the car, afterwards swore that he had to make four miles in thirty-eight minutes, without making allowance for stoppages; so that it appeared that the average rate of speed of the car was more than six miles an hour, and the ordinance would have clearly been admissible after such evidence had gone to the jury.

2nd Exception.—McDonnell, whose declaration was not permitted to go to the jury, was not present when the accident occurred, saw nothing of it, and had no knowledge of the particulars of the accident, further than information derived from others, and any declarations he may have made, must of necessity have been based exclu-

sively upon information derived from others, and were not admissible evidence to affect the interest of, or bind, the plaintiff. The declaration offered, was made by a person having no legal interest in the suit before the suit was commenced, and without any knowledge of the transaction, other than what was derived from other persons. Such a declaration stands upon the same footing with declarations made by a person, to whom letters of administration are afterwards granted, which are not admissible in evidence against him as administrator. *Mangum vs. Webster & Baynes,* 7 *Gill,* 81 ; *Dent's Adm'x vs. Dent,* 3 *Gill,* 482.

3rd Exception.—The questions of law involved in the prayers of the plaintiff, which were granted, and those of the defendant, which were rejected, have frequently been before this Court for adjudication. Whatever may have been the decisions elsewhere, in this State it is now well settled law, that if an injury results directly from the want of ordinary care and prudence, on the part of the defendant or its agents, and not from the want of such care and prudence on the part of the plaintiff as ought, under all the circumstances, to have been expected from one of his age and intelligence, or from want of ordinary care and prudence on the part of his parents, directly contributing to the accident, the plaintiff is entitled to recover. This Court has also distinctly recognized the rule that a child, so far as he is *personally* concerned, is to be held only to such degree of care, as ought to be reasonably expected from children of his age and intelligence. *Fryer's Case,* 30 *Md.,* 47 ; *McMahon's Case,* 39 *Md.,* 451, 452.

Nor will the plaintiff be prevented from recovering, in consequence of the negligence of its parents, if the jury shall find that the consequences of such negligence could have been avoided by the exercise of ordinary care and prudence, on the part of the defendant or its agents. This principle has been announced by this Court, in the

cases of *Frech vs. The Phila., Wil. & Balt. R. R. Co.*, 39. *Md.*, 575 ; *North. Cent. Railway Co. vs. Price*, 29 *Md.*, 420 ; *North. Cent. Railway Co. vs. Gies*, 31 *Md.*, 357 ; *Lewis vs. Balto. & Ohio R. R. Co.*, 38 *Md.*, 588 ; *McMahon's Case*, 39 *Md.*, 52, and *Fitzpatrick's Case*, 35 *Md.*, 44.

The principles announced by this Court in the above cited cases have been exactly followed by the plaintiff's first and third prayers, and they were therefore properly granted. The defendant's prayers, which were rejected, assume as matter of law that if there was negligence on the part of the parents of the plaintiff, or on the part of the plaintiff herself, without regard to her age and intelligence, that the plaintiff is not entitled to recover, notwithstanding the jury may have believed that the accident could have been avoided by the exercise of ordinary care on the part of the driver of the car. For this reason they were properly rejected. The plaintiff's second prayer was specially excepted to on the ground of there being no evidence to show that the car at the time the accident occurred, was running at a greater speed than six miles an hour. We have shown, in considering the first exception, that there was evidence before the jury tending to prove that the car was running at a speed greater than was allowable under the City ordinance, and the defendant was certainly guilty of negligence by so running its car, if the jury believed from the evidence that the accident could have been avoided if the car had not been running at greater speed than six miles an hour. There was no error therefore in granting the plaintiff's second prayer, especially when taken in connection with the defendant's ninth prayer, which was granted.

It was contended by the counsel of the defendant that, if the driver saw that the railroad track was clear and no one upon it, he had performed all that ordinary care and prudence required of him, and it was not for him to sup-

Balt. City Pass. Railway *vs.* McDonnell.

pose that any one would put himself in the way of the car, by attempting to cross in front of it. In a large populous city where all descriptions of vehicles are constantly passing and repassing, as well as persons on foot, including the aged and infirm as also children who are young and wanting in prudence and discretion, it is the duty of drivers of cars not only to see that the railroad track is clear, but also to exercise a constant watchfulness for persons, who may be approaching the track. Unless he does so he does not exercise that ordinary care and prudence, which the law imposes upon him. In this case there is proof tending to show that instead of exercising such watchfulness, his attention was occupied by a young lady standing in the door of a house on the opposite side of the street from that from which the plaintiff was approaching.

Finding no error in the rulings of the Court below, the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided 29th February, 1876.)