Wis.]          JANUARY TERM, 1894.          597

Thoresen vs. The La Crosse City R. Co.

Thoresen, Administrator, Appellant, vs. The La Crosse City Railway Company, Respondent.

87   597.
89   194

*April 12 — May 1, 1894.*

*Street railways: Collision with wagon crossing track: Negligence of car driver: Contributory negligence: Court and jury.*

1. An ordinance providing that any team or vehicle meeting or being overtaken by a street car shall give way to the car gives the driver of the car no right to ignore or disregard the presence of other vehicles on the street, especially at street crossings.

2. It is the duty of a street-car driver to exercise the highest degree of care to avoid collision or accident, especially at street crossings; and when approaching a much-used crossing he is bound to keep a lookout ahead, and will not be excused for failure to do so by the fact that he was giving his attention to the identification of another car, to which he expected to change.

3. Upon the evidence in this case, it is *held* that it was a question for the jury whether the plaintiff's intestate (whose death resulted from the collision of a street-car with her wagon) was guilty of negligence in attempting to cross the street-car tracks, about thirteen feet wide, at a distance of about two rods in front of a single-horse car, proceeding at a very moderate pace.

APPEAL from the Circuit Court for *La Crosse* County.

This action is for damages for the death of the plaintiff's intestate, caused by alleged negligence of the defendant. The complaint states, in substance, that October 17, 1892, between 7 and 8 o'clock in the evening, the deceased was traveling in a wagon drawn by a horse along King street in an easterly direction, and while crossing Fourth street at the intersection of these streets her wagon was struck by a street car of the defendant going in a northerly direction along the center of the latter street, and her wagon was broken and overturned, and she was thrown to the ground, receiving injuries from which she died. Negligence was charged against the defendant, in causing its car to approach and rapidly pass said crossing, and carelessly omit-

ting to ring the car bell or otherwise warn or notify the deceased of the approach of said horse and car, or to stop at said crossing and permit the horse and wagon driven by the deceased to pass in safety. The defendant denied all negligence on its part, and alleged negligence on the part of the deceased, causing the accident. The circuit court, at the close of the testimony, granted judgment of nonsuit against the plaintiff, holding there was not sufficient evidence of negligence on the part of the defendant to go to the jury, and that the deceased was guilty of contributory negligence at the time, causing or contributing to the accident; and the plaintiff appealed.

It was shown at the trial that a switch or double track in the center of Fourth street, 469 feet long and thirteen feet wide, extended across King street at the point in question, 234 feet of which was south of King street, and 169 feet was north thereof. The accident occurred about 7 o'clock in the evening, and it was dark and raining a little. There was an electric light burning over the center of Fourth street, about 410 feet south of King street, and another about 310 feet north thereof. The car was lighted with three lamps on the inside, and had the usual windows in the front and sides; and a pink light could be seen on one side of the front, and a white light in the center of it. The city wood and hay market is at the northeast corner of the intersection of these streets, and on the southwest corner is a school-house, on the southeast corner is a public park, and on the northwest corner is a bakery and restaurant, and the crossing is in a much-traveled portion of the city.

The deceased had been to deliver milk at the bakery, accompanied by a boy, Harold Wold, about thirteen years of age, who assisted her. The horse and wagon stood on the south side of King street, facing west, when they got in, and turned around and started easterly along said King

street across Fourth street.  Harold Wold testified, on be-
half of the plaintiff, that they saw street cars on the track
on Fourth street; one about half a block south of King
street, and one crossing King street, going south.  "It
seemed to us as if the one about half a block south was
standing.  We crossed the street right after the car going
south passed us, and we lost sight of the car standing on
the south side that was going north.  I don't know how
we lost sight of it.  We crossed over just as quick as the
car going south passed us.  It was right at the side of her
horse.  We didn't then look at the other car,— the one
standing.  When we got on the first track, we saw the
standing car coming very fast.  The car driver driving the
car coming from the south was looking back, and he con-
tinued looking back as long as I saw him.  I didn't see
him try to stop the car.  When we were on the last track
the car struck the wagon.  The deceased had the whip in
her hand, and used it, and tried to drive fast, but it was
too late.  When the car struck the wagon I fell out on the
side.  The seat came on the side, and I went onto the
ground.  The wagon was thrown on Fourth street, on the
south side of King street, towards the park.  One of the
hind wheels was broken.  Didn't see the driver just all
the time, on the car coming south.  As we got on the sec-
ond track we saw him.  When we got to the first track the
other street car was about two rods off, and we thought we
had plenty of time, and drove on; and as the last wheel was
on the track the street car struck us, and the street-car driver
was looking behind.  The horse stopped right off; only
went a few steps and stood still.  Were on the first track
when the street car was two rods off.  Tho deceased was
going to the water trough to water the horse, or across the
street.  We had another place to deliver milk, down on
Fourth street and across the street from where we started,—
the second house from the park.  Were going straight

ahead when she fell out. Were not going down Fourth street at the time. Were tipped out on Fourth street just below the crossing. I don't know how many feet below. The east side of the car struck the wagon. I saw what the driver was doing. He was looking back. Don't know when he stopped looking back, but I saw him when the car struck the wagon, and he was then looking back. He didn't have hold of the brake, trying to set it. I just looked up as the car struck the wagon. Don't know what he was doing before then. Didn't see him handle the brake at all. Deceased took up the whip just when we got on the last track, and the horse on the horse car struck the wheel pretty near then. The car struck the hind wheel, and that tipped the wagon up and threw it on the side. Didn't see the driver of the car just when it was two rods off, but did as soon as we got pretty near across. He was two or three feet off when the car struck the wagon." The testimony was that the car was going at a good brisk walk; an ordinary speed; not very fast. The deceased was found lying twenty or thirty feet south of King street.

Plaintiff at this point rested his case, and the defendant's counsel moved for a nonsuit, but the court overruled it.

Evidence was given by the driver that it was so dark he could not see anything; that there was a good bell on the horse; that he passed a south-bound car between King and the next street south, standing on the south part of the switch; it had got down near the end of the switch, and it was about 170 feet south of King street; that he wanted to change off to his own car, so he brought his car pretty near to a standstill; that he thought the south-bound car was No. 3,— his own car; found it was not his car, let the brake loose, started ahead, and looked to the front. "The horse stepped only a couple of times, and I saw the horses stand face to face, and turned my horse around to the left." He testified that the horse came right along toward

him; that he didn't say anything, but put on the brake
again; that it was dark in front of him; couldn't see any-
thing. Being asked whether he was looking behind, he
answered, "I looked ahead again, and, after starting up,
looked up, and that is the first I saw of the wagon;" that
he was trying to stop his car, and was able to stop it.
"Q. They drove together there at that time? A. Yes, sir.
This was twenty feet south of King street. The wagon
stood over on two wheels." Being asked to explain how it
was, if he stopped his car enough to look at the other as it
passed him, that in taking two or three steps which his
horse took it had gone up north 150 feet, he answered:
"The woman was twenty feet south of King street.
Q. You say this car stood 170 feet from King street as you
passed it? A. Of course; 170 feet. As I looked in front,
the horses stood face to face. Q. And your horse only
took two or three steps after you looked at the car?
A. Yes, sir. Q. How far did your horse go? A. Went
just as long as the car was. Q. Went the length of your
car and the horse? A. Yes, sir. · Q. Then you struck?
A. Yes, sir."

The defendant produced other testimony tending to show
that the south-bound car met and passed the north-bound
car about 120 feet south of King street; that the driver of
the north-bound car started up, and did not go more than
two or three steps, and the horse of the intestate was there;
that the horses faced each other when he saw it; that the
car horse did not walk fast; that the front part of the car
hit the hind wheel, and tipped the wagon over, and that it
was from twenty to thirty-five feet south of King street
where the woman fell out; that the over-turned wagon
stood with two wheels up, tipped over from west to east,
and the horse had pulled out of the shafts, standing in
front, facing south. There was a conflict of evidence as to
whether the accident occurred at the crossing or intersec-

tion of the streets, or south of King street as above stated, and whether the intestate was driving directly across King street, or south on and along Fourth street. The defendant put in evidence an ordinance of the city of La Crosse, which provides: "The cars of said company shall be entitled to the track, and in all cases where any team or vehicle shall meet or be overtaken upon either of the street railways in said city by any such car, such team or vehicle shall give way to said car," etc.

For the appellant there was a brief by *Martin Bergh*, and *Bleekman & Bloomingdale*, and oral argument by *F. H. Bloomingdale* and *Mr. Bergh*. They argued, among other things, that in cases of injuries by negligence a nonsuit is proper only when there is an entire absence of evidence tending to establish the case, or when the negligence of the party injured is affirmatively and clearly shown, so as to admit of no doubt or controversy. *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489; *Imhoff v. C. & M. R. Co.* 22 id. 681; *Spensley v. Lancashire Ins. Co.* 54 id. 433; *Nelson v. C., M. & St. P. R. Co.* 60 id. 320; *Dahl v. Milwaukee C. R. Co.* 62 id. 652; *Hoye v. C. & N. W. R. Co.* id. 666; *Guggenheim · v. L. S. & M. S. R. Co.* 57 Mich. 488; *Hill v. Fond du Lac*, 56 Wis. 242; *Chicago, St. L. & P. R. Co. v. Hutchinson*, 120 Ill. 587; *Sherry v. N. Y. C. & H. R. R. Co.* 104 N. Y. 652; *Tyler v. N. Y. & N. E. R. Co.* 137 Mass. 238; *Northrup v. N. Y., O. & W. R. Co.* 37 Hun, 295; *Remer v. L. I. R. Co.* 36 id. 253. The driver of a street car must exercise ordinary care to avoid collisions with wagons or carriages upon the street, and failure in this respect will render the company liable in case of injury. 2 Shearm. & Redf. Neg. (4th ed.), 250; Beach, Contrib. Neg. (2d ed.), sec. 287; *Collins v. South B. R. Co.* 142 Mass. 301; *Heucke v. Milwaukee C. R. Co.* 69 Wis. 401; *Baltimore C. P. R. Co. v. McDonnell*, 43 Md. 534, 553; *Anderson v. Minneapolis St. R. Co.* 42 Minn. 490; Booth, Street Railways, 418 *et seq.; Strutzel v. St.*

*Paul C. R. Co.* 47 Minn. 543; *Citizens' St. R. v. Steen,* 42
Ark. 321; *Mayo v. B. & M. R. Co.* 104 Mass. 137; *Chicago
C. R. Co. v. Robinson,* 127 Ill. 9; *Murphy v. Orr,* 96 N. Y.
14; *Hyland v. Yonkers,* 15 N. Y. St. Rep. 824. A person
is not bound to exercise the same care in crossing a street-
car track as in crossing a railroad track, and the question
in each case whether a person was negligent in doing so is
for the jury. *Shea v. St. Paul C. R. Co.* 50 Minn. 395; *Wells
v. Brooklyn C. R. Co.* 58 Hun, 389; *Quinn v. Atl. Ave. R.
Co.* 12 N. Y. Supp. 223; *Watson v. Minneapolis St. R. Co.*
53 Minn. 551; *Lynam v. Union R. Co.* 114 Mass. 83; *Ker-
rigan v. West End St. R. Co.* 158 Mass. 305; *Pope v. Kan-
sas City C. R. Co.* 99 Mo. 400; *Benjamin v. Holyoke St. R.
Co.* 160 Mass 3; *Driscoll v. West End St. R. Co.* 159 id. 142;
*Peterson v. St. Paul C. R. Co.* 55 N. W. Rep. 906.

For the respondent there was a brief by *Losey & Wood-
ward,* and oral argument by *G. M. Woodward.*

PINNEY, J. The evidence in this case, we think, was
such as to require the submission of the case to the jury.
The testimony on the part of the plaintiff tended very
clearly to show that the defendant, by its car driver, was
negligent in the conduct and management of its car, under
the circumstances as described by the witness Harold Wold,
and there are some facts and circumstances that tend to
corroborate this view. There is no doubt that the driver
looked at, and back towards, the south-bound car; but
there is a decided conflict of evidence as to the relative
positions of the wagon and his car, and the distance they
were apart at the time. Undoubtedly the driver had a
right to look for the car to which he expected to change;
but his right in this respect was relative and not absolute.
The evidence shows that the intersection of these streets
was a much-frequented place in the city, and the evening
was dark and rainy. The single-horse street car had only

two or three passengers aboard, and, like other vehicles, had a common right of passage in the street, but was necessarily confined to its track; and it would seem, from the ordinance in evidence, that it had priority of passage when met or overtaken by any other vehicle. The driver of the car had, however, no right to ignore or disregard the presence of other vehicles on the street, and particularly at the crossing. The authorities cited by the appellant's counsel show that it is the duty of a driver to exercise the highest degree of care to avoid any collision or accident, especially at street crossings, and that he should exercise all the care that prudence may suggest in looking about and listening to assure himself that his track is clear and safe, and for his failure to do so his employer is responsible. *Heucke v. Milwaukee C. R. Co.* 69 Wis. 401; *Collins v. South Boston R. Co.* 142 Mass. 301; *Baltimore C. P. R. Co. v. McDonnell*, 43 Md. 534, 553; *Anderson v. Minneapolis St. R. Co.* 42 Minn. 492. The company was bound to exercise its rights and privileges with a proper regard to the rights and safety of others lawfully using the street; and on the occasion in question the driver should have kept a lookout and exercised a proper degree of caution, in approaching the crossing, in this respect. He ought not to have given his attention solely to an attempted identification of his car. The duty which the company and its employees owe to the public is paramount to that which they owe to each other. *Anderson v. Minneapolis St. R. Co.* 42 Minn. 493.

It is the duty of the company and its employees to the public, to seek to avoid accidents where they are likely to occur, instead of omitting the reasonable precautions that the situation and circumstances naturally and fairly suggest. It is evident that a car proceeding as slowly as the one on the present occasion could have been easily and readily stopped. There is evidence tending to show that the driver, when he ought to have been keeping a lookout

Thoresen vs. The La Crosse City R. Co.

ahead, was looking behind, and that he did nothing to stop the car. Although there is evidence to support a contrary contention, we forbear to remark upon it, for the obvious reason that the truth of the matter is for the consideration of a jury, subject to the power of the court to set aside any verdict not warranted by the evidence.

In order to justify the court in taking a case from the jury, the question must be wholly one of law; for if it depends upon controverted facts, upon what facts the evidence establishes, the credibility of witnesses, or what inferences or conclusions should be drawn from the testimony, then it is clearly a question of fact for the jury. *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 496; *Nelson v. C., M. & St. P. R. Co.* 60 Wis. 320; *Hill v. Fond du Lac,* 56 Wis. 242; *Valin v. M. & N. R. Co.* 82 Wis. 5, 6. The rule is well settled that proof of contributory negligence must be clear and decisive in order to warrant a nonsuit or an absolute direction to the jury on that ground. "When circumstances leave the inference of contributory negligence in doubt, and the court is unable to say that, upon the most favorable construction which can be given to the evidence for the plaintiff, there is nothing to submit to a jury, a nonsuit is improper." *Ewen v. C. & N. W. R. Co.* 38 Wis. 613, 628. In *Houfe v. Fulton,* 29 Wis. 296, it was held that: "The question of contributory negligence is one eminently proper for a jury to determine; and when the evidence does not clearly and indisputably show such negligence or want of care on the part of the plaintiff, so as to leave nothing to submit to the jury on the opposite theory or position, a nonsuit should not be granted." *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489; *Bessex v. C. & N. W. R. Co.* 45 Wis. 483.

Whether, upon all the facts within the observation of the deceased, she reasonably came to the conclusion that she could cross the tracks of the street railway company, we

Thoresen vs. The La Crosse City R. Co.

cannot know, except from the testimony of the boy Harold Wold, and his estimate of distances may not be entirely accurate; and in the rain and darkness the deceased may not have been able to judge accurately. Without commenting upon the evidence, we think, under the facts and circumstances disclosed, that it was a question for the jury to say whether the deceased was driving directly across Fourth street, or directly down it towards the approaching car, and that the court could not properly say, under the evidence, as a matter of law, that it was negligence which ought to prevent a recovery for her to attempt to cross the tracks, about thirteen feet in width, at an estimated distance of two rods in advance of a single-horse street car, proceeding at a very moderate pace. The evidence, in many respects, is uncertain and confusing; and the case is one peculiarly for the experience and practical knowledge of a jury, to weigh and give proper effect to the evidence and draw just inferences and conclusions, in view of all the facts and circumstances of the case. We do not think that the evidence shows clearly and decisively that the deceased was guilty of contributory negligence, so as to justify a nonsuit on that ground, and for these reasons the judgment appealed from must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

NEWMAN, J., took no part.